IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>HOUSTON COUNTY and DAN PERDUE, SHANE GOTTWALS, GAIL ROBINSON, TAL TALTON, and MARK BYRD, in their official capacities as members of the Houston County Board of Commissioners,<br><br>　　　　　　Defendants. | Civil Action No. 5:25-cv-25 |

## **COMPLAINT**

The United States of America, plaintiff herein, alleges:

1.　　　The United States files this action pursuant to Section 2 and Section 12(d) of the Voting Rights Act, 52 U.S.C. §§ 10301 and 10308(d).

2.　　　Section 2 of the Voting Rights Act prohibits enforcement of any voting qualification, prerequisite to voting, standard, practice, or procedure that results in the denial or abridgment of the right to vote on account of race, color, or language minority status.

3.　　　In this action, the United States challenges the method of electing the Houston County Board of Commissioners as a violation of Section 2 of the Voting Rights Act.

## **JURISDICTION AND VENUE**

4.　　　This Court has original jurisdiction of this action under 28 U.S.C. §§ 1331, 1345, and 2201(a) and 52 U.S.C. § 10308(f).

5.　　　Venue is proper in this Court under 28 U.S.C. §§ 90(b)(2) and 1391(b).

## PARTIES

6.      The Voting Rights Act authorizes the Attorney General to file a civil action on behalf of the United States of America seeking injunctive, preventive, and permanent relief for violations of Section 2 of the Act.  52 U.S.C. § 10308(d).

7.      Defendant Houston County is a political and geographical subdivision of the State of Georgia.

8.      Defendants Dan Perdue, Shane Gottwals, Gail Robinson, Tal Talton, and Mark Byrd are elected members of the Houston County Board of Commissioners, the governing authority of Houston County for purposes of legislation and policy-making.  Houston Cnty. Related Laws art. I, § 1.7.  They are sued in their official capacities.

## ALLEGATIONS

9.      The current method of electing the Houston County Board of Commissioners dilutes the voting strength of Black citizens, in violation of Section 2 of the Voting Rights Act.

10.     The Houston County Board of Commissioners has five members, elected in staggered at-large contests for four-year terms.  Houston Cnty. Related Laws art. I, § 1.2.  Each member is elected to a numbered Post, with the commissioner elected from Post 1 serving as chairman.  *Id.* §§ 1.2, 1.5(b).

11.     Elections for the Houston County Board of Commissioners are held in November of even-numbered years, *see* Ga. Code §§ 21-2-2(15), 21-2-9(a), and are preceded by partisan primaries in May.  If no candidate obtains a majority in either a primary or the general election, the top two finishers advance to a runoff election four weeks later.  *See id.* § 21-2-501(a).  Voters may cast one vote for a candidate running for election to each numbered Post.

**Houston County Demographics and Geography**

12.     According to the 2020 Census, Houston County has a population of 163,633, including 86,211 White persons (52.7%) and 54,148 Black persons (33.1%).[1]  Houston County also has a voting-age population of 122,118, including 68,018 White persons (55.7%) and 38,329 Black persons (31.4%).

13.     Houston County contains geographically and socially distinct Black and White communities, with the Black community concentrated in north and east Warner Robins. Churches and other community organizations also reflect racial separation.

14.     The 2018-2022 American Community Survey estimated that Houston County had a citizen voting-age population of 118,735, including 69,195 White persons (58.3%) and 37,405 Black persons (31.5%).

15.     There are approximately 105,000 active registered voters in Houston County, including approximately 58,000 White registered voters (55%) and approximately 32,000 Black registered voters (30%).

16.     White registered voters in Houston County turn out to vote at significantly higher rates than Black registered voters in Houston County.

17.     The Black population of Houston County is sufficiently numerous and geographically compact to constitute a majority of the voting-age population and the citizen voting-age population in a single-member district for the Houston County Board of Commissioners under a five-district plan.

---

[1] As used herein, the term "White" denotes White non-Hispanic persons and the term "Black" denotes Black non-Hispanic persons.

18.     In a five-district plan drawn using traditional redistricting principles, a majority-Black district may be crafted that includes neighborhoods in the northern and eastern portions of the City of Warner Robins and apartment complexes along Carl Vinson Parkway.

19.     Analysis of votes cast within such majority-Black district in a five-district plan indicates that Black-preferred Black candidates would have won a majority of votes in the most recent contest between a Black candidate and a White candidate for the Houston County Board of Commissioners, as well as in other interracial countywide contests.  Thus, Black voters would have the opportunity to elect their preferred candidates in elections conducted solely within the boundaries of such a district.

20.     The Black population of Houston County is also sufficiently numerous and geographically compact to constitute a majority of the voting-age population and citizen voting-age population in a single-member district for the Houston County Board of Commissioners under a four-district plan.

21.     In a four-district plan drawn using traditional redistricting principles, a majority-Black district may be crafted that includes neighborhoods in the northern and eastern portions of the City of Warner Robins, apartment complexes along Carl Vinson Parkway, and additional racially diverse neighborhoods in southern Warner Robins.

22.     Analysis of votes cast within such majority-Black district in a four-district plan also indicates that Black-preferred Black candidates would have won a majority of votes in the most recent general election contest between a Black candidate and a White candidate for the Houston County Board of Commissioners, as well as in other interracial countywide contests. Thus, Black voters would have the opportunity to elect their preferred candidates in elections conducted solely within the boundaries of such a district.

**Elections for the Houston County Board of Commissioners**

23.     Since Reconstruction, only one Black candidate, Houston Porter, has been elected to the Houston County Board of Commissioners.

24.     After an unsuccessful campaign in 1978, Porter was elected to the Houston County Board of Commissioners in 1980.  Porter defeated an incumbent in a primary runoff election by only 49 votes and was uncontested in the general election.  Porter was reelected in 1984 and 1988 and declined to seek reelection in 1992.

25.     Black candidates ran for the Houston County Board of Commissioners in 1992, 1994, 2002, 2016, 2020, and 2022.  During this period, Black candidates have run as Democrats, as a Republican, and as an independent.  All were defeated in partisan primaries or general elections.

26.     In elections for the Houston County Board of Commissioners, the Black population of Houston County is politically cohesive, and the White population votes sufficiently as a bloc to usually defeat the preferred candidate of Black voters.

27.     Black voters consistently vote for Black candidates for the Houston County Board of Commissioners.

28.     Since 2002, at least 85% of Black voters have supported Black candidates in general elections for the Houston County Board of Commissioners.

29.     Although relatively few Black voters have participated in Republican primaries, most of the Black voters who did participate in the 2022 Republican primary supported a Black Republican candidate for the Houston County Board of Commissioners.

30.     In contests between Black candidates and White candidates for the Houston County Board of Commissioners, White voters cast their ballots sufficiently as a bloc to defeat Black voters' preferred candidate.

31.     Since 2002, fewer than one-fourth of White voters supported Black-preferred Black candidates in general elections for the Board of Commissioners.  Since 2016, fewer than one in ten White voters have supported Black-preferred Black candidates in general elections for the Board of Commissioners.  As a result, each Black-preferred Black candidate was defeated.

32.     Even when a Black candidate has run as a Republican and received majority support from participating Black voters in the primary election, less than one-fourth of White voters supported that candidate in that primary.  As a result, this Black-preferred Black candidate was defeated.

**Additional Countywide Elections in Houston County**

33.     Since 2014, four Black candidates have sought Houston County offices and several Black candidates have run for countywide seats on the Houston County Board of Education.

34.     Despite cohesive Black support for Black candidates for Houston County offices, Black candidates for Houston County offices were uniformly defeated in general elections, due to White bloc voting.

35.     Despite cohesive Black support for Black candidates for countywide seats on the Houston County Board of Education, most Black candidates for countywide seats on the Houston County Board of Education were defeated in nonpartisan runoff elections, due to White bloc voting.  No Black candidate for a countywide seat on the Houston County Board of Education has received the support of most White voters in a nonpartisan runoff election.

**Additional Relevant Circumstances in Houston County**

36.    Houston County has a history of official discrimination that affected the right of Black residents to register, to vote, and to participate meaningfully in the democratic process. This includes all-White county elected officials governing a majority-Black population from the end of Reconstruction into the 1940s, discriminatory at-large municipal elections, segregated education and resistance to effective desegregation, and racially discriminatory incidents across various levels of government.

37.    Racially-charged incidents persist in Houston County.  In the last year alone, students at a local high school were filmed mimicking the Ku Klux Klan, and the Houston County School District agreed to implement anti-discrimination training after acknowledging racial harassment and retaliation concerns arising from an athletic coach's conduct.

38.    The Black population of Houston County continues to suffer from the effects of discrimination in education, health, and employment, including public employment.  Resulting socioeconomic disparities hinder the ability of Black residents to participate effectively in the political process.

39.    Although Black residents in Houston County are only marginally less likely than White residents to have attended a college or university, Houston County schools continue to produce inferior outcomes for Black students, as measured through enrollment in AP courses, school discipline, and academic non-promotion.

40.    Black residents in Houston County are more than twice as likely as White residents to experience poverty, roughly twice as likely to be unemployed, and substantially less likely to be employed by the County, particularly in higher-paying positions.  Black residents are

also less likely than White residents to be in "Excellent," "Very Good," or "Good" health and are less likely to have financial reserves needed to address health emergencies.

41.    Elections for the Houston County Board of Commissioners are characterized by practices and procedures that impair Black voters' opportunity to elect commissioners of choice. These include, but are not limited to, the use of numbered posts, staggered terms, and runoff elections.

## CAUSE OF ACTION

42.    Under the totality of circumstances, the current method of electing the Houston County Board of Commissioners results in Black citizens having less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

43.    Unless enjoined by order of this Court, Defendants will continue violating Section 2 of the Voting Rights Act by administering, implementing, and conducting future elections for the Houston County Board of Commissioners using this method of election.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court enter an order:

(1)    Declaring that the current method of electing the Houston County Board of Commissioners violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301;

(2)    Enjoining Defendants, their agents and successors in office, and all persons acting in concert with them from administering, implementing, or conducting any future elections for the Houston County Board of Commissioners under the current method of election;

(3)    Ordering Defendants to devise and implement an election system for the Houston

County Board of Commissioners that complies with Section 2 of the Voting

Rights Act; and

(4)    Granting such additional relief as the interests of justice may require.

Date: January 16, 2025

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

*/s/ Daniel J. Freeman*
R. TAMAR HAGLER
RICHARD DELLHEIM
DANIEL J. FREEMAN
ERNEST A. MCFARLAND
BRIAN REMLINGER
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Phone: (202) 305-5451
Fax: (202) 307-3961
daniel.freeman@usdoj.gov