## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

UNITED STATES OF AMERICA,

    *Plaintiff*,

      v.

HOUSTON COUNTY and DAN
PERDUE, SHANE GOTTWALS,
GAIL ROBINSON, TAL TALTON,
and MARK BYRD, in their official
capacities as members of the Houston
County Board of Commissioners,

    *Defendants*.

Civil Action No. 5:25-cv-0025-MTT

## DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO INTERVENE

Defendants submit this response in opposition to the Motion to Intervene filed by Courtney Driver and Mike Jones (collectively, the "Movants").

## INTRODUCTION

The Movants seek to intervene in a Voting Rights Act case filed by the Attorney General challenging the method of countywide election of the five members of the Houston County Board of Commissioners. Both the DOJ in the main action and the Movants in their Proposed Complaint-in-Intervention make the identical claim that the method of electing commissioners "dilutes the voting strength of Black voters in violation of Section 2" of the VRA. [Doc.

7 at 2; Doc. 7-1 at ¶ 2]. The Movants argue for intervention as of right or, in the alternative, for permissive intervention under Fed. R. Civ. P. 24. DOJ opposes intervention as of right, but does not oppose permissive intervention. [Doc. 10]. This Court should not grant the motion under either theory.

## ARGUMENT AND CITATION OF AUTHORITY

### I.    The Movants are not entitled to intervention as of right.

To intervene as of right, Rule 24 requires the Movants to demonstrate that: (1) the motion is timely; (2) they have an interest relating to the property or transaction that is the subject of the action; (3) they are so situated that disposition of the action, as a practical matter, may impede or impair their ability to protect that interest; and (4) their interest is inadequately represented by the existing parties—in this case, the DOJ. *Worlds v. Dep't of Health & Rehab. Servs., State of Fla.*, 929 F.2d 591, 593 (11th Cir. 1991) (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir.1989)). If any one of these requirements is not met, the Movants cannot intervene as of right. While Defendants do not contest the timeliness of the motion, the Movants do not satisfy any of the other requirements.[1]

---

[1] DOJ agrees, noting that intervention of right is unavailable when the proposed intervenors and an existing party are seeking the same objective. [Doc. 10 at 1 n.1] (quoting *Stone v. First Union Corp.*, 371 F.3d 1305, 1311 (11th Cir. 2004)).

A.     **The Movants do not state a legal interest in the pending litigation.**

The interest necessary to support the second requirement of Rule 24(a)(2) intervention has "been described as 'a direct, substantial, legally protectable interest in the proceedings.'" *Id.* at 594 (quoting *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir.)). Here, the Movants do not have a protectable interest in the proceeding because they never allege they are impacted by the current election system and because § 2 of the VRA does not provide a private right of action. While "a party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24," *Chiles*, 865 F.2d at 1213, the Movants here rely on the fact they "could bring this action all by themselves in a separate lawsuit," [Doc. 7 at 5], as a partial basis for their interests being affected. Even if they have an injury sufficient for standing, they cannot bring a lawsuit on their own, meaning they do not have an interest in the issues in this case.

In this case, DOJ challenges Houston County's method of electing county commissioners under 52 U.S.C. § 10301 (§ 2 of the VRA). [Doc. 1 at ¶¶ 1–3]. The DOJ relies on 52 U.S.C. § 10308(d) (§ 12 of the VRA), which specifically authorizes the Attorney General to enforce the provisions of § 2, but it does not confer a private right of action on individuals. Thus, because the Movants lack a private right of action, they cannot have an interest in the proceeding because

they could not bring it themselves. And they never claim they live in a part of the County impacted by the lack of districted elections.

> 1. *There is no private cause of action to enforce § 2.*

Courts have frequently assumed a private right to enforce § 2, but it remains an "open question," because the Supreme Court has not decided such a right exists. *Brnovich v. Democratic National Committee*, 594 U.S. 647, 689 (2021) (Gorsuch, J., concurring). The Eighth Circuit, in the only thoroughly reasoned circuit court opinion on the issue, recently concluded that no private cause of action exists to enforce § 2. *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204 (8th Cir. 2023). There, the court found that § 2 provides no express cause of action for private plaintiffs, and the text and structure of the VRA make it clear that Congress did not intend to implicitly create one. *Id.* at 1206–07. And courts may not judicially "create one, no matter how desirable that might be as a policy matter." *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001). This Court should not do so here.

> 2. *The VRA's text and structure show that Congress did not create a private cause of action.*

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Id.* at 286 (citation omitted). To determine whether Movants have a cause of action, courts must look to "the

statute Congress has passed." *Id*. And as with all statutory interpretation, text and structure are key. *Id*. at 288.

Section 2 itself contains no express cause of action. *See Morse v. Republican Party of Va.*, 517 U.S. 186, 232 (1996) (plurality); 52 U.S.C. § 10301. In a bygone era, federal courts would liberally read causes of action into statutes to effectuate the courts' loose view of "congressional purpose." *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964). But the Supreme Court has long since "sworn off the habit…" *Sandoval*, 532 U.S. at 287; *see also Egbert v. Boule*, 596 U.S. 482, 491 (2022) (repudiating "the heady days in which [the Supreme] Court assumed common-law powers to create causes of action" (quotation omitted)). But "creating a cause of action is a legislative endeavor," requiring a careful cost-benefit analysis for which courts are ill-equipped. *Egbert*, 596 U.S. at 491.

The textual evidence here shows that Congress specifically did not create a private cause of action to enforce § 2. Instead, in § 12 of the Act, Congress expressly empowered the Attorney General to enforce § 2 and numerous other provisions through criminal and civil actions. 52 U.S.C. § 10308(d). That is what DOJ has done in this case. But § 12, like § 2, says nothing about private plaintiffs or private remedies. And that omission is critical. "The express provision of one [cause of action] suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290.

5

The inclusion of another cause of action is entitled to such great weight that it may "preclude[e]" a "private right of action, even though other aspects of the statute ... suggest the contrary." *Id.* (citation omitted). Remember, the VRA is a multi-pronged statute with a detailed enforcement process. *See* 52 U.S.C. §§ 10302, 10308, 10310. When Congress, in such a "comprehensive legislative scheme," opts to specify public enforcement, the only permissible inference is that the private remedy was "deliberately omitted." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985) (quotation omitted).

"If the 1965 Congress 'clearly intended' to create a private right of action, then why not say so in the statute? If not then, why not later, when Congress amended § 2?" *Ark. State Conf. NAACP*, 86 F.4th at 1214. The readily apparent reason is that Congress vested enforcement power in the Attorney General instead of private parties—power the Attorney General has exercised here.

3.    *The Movants never allege where they live in the county.*

Unlike racial gerrymandering claims, which challenge specific district boundaries, *see United States v. Hays*, 515 U.S. 737,745 (1995), § 2 vote dilution claims challenge the lack of majority-minority districts in the "*area as a whole.*" *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 504 (2006) (Roberts, C.J., concurring in part and dissenting in part) (emphasis added). While the Movants allege they live in Houston County, [Doc. 7-1 at ¶¶ 5–6], they never allege they live in an area where a majority-Black district

could be drawn or that such a district could be drawn in their portion of the county. As a result, they have not shown they have an interest that could be addressed by this lawsuit.

Without a private right of action under the VRA, the Movants lack a legally protectable interest in this case and their motion to intervene in this case should be denied.

**B.    The Movants would not be disadvantaged by exclusion.**

Even if the Movants could identify an interest in the action, the Movants' rights are not impaired by denying their motion to intervene. As discussed above, 52 U.S.C. § 10308(d) provides that when there has been a violation of § 2 of the VRA, "the Attorney General may institute . . . an action for preventive relief." In this case, both the Movants and the DOJ allege that the voting strength of Black voters is diluted under the current form of election of commissioners in Houston County. The DOJ and the Movants both seek to enjoin the election of commissioners using the current method of election. [Doc. 1 at Relief (2); Doc. 7-1 Relief (2)]. If the DOJ's lawsuit is successful and the current method of election of the Board of Commissioners is enjoined, the Movants do not have any impaired interest because they will receive what they are seeking. And there is no basis to conclude that "the would-be intervener [would] be practically disadvantaged by his exclusion from the proceedings." *Huff v. Comm'r of IRS*, 743 F.3d 790, 800 (11th Cir.

2014). The Movants are not disadvantaged from being excluded because they could not bring this case in the first place and the DOJ has significant government resources to litigate this case. The Movants will have the same "say in the method of electing their county government," [Doc. 7 at 5], whether they are part of this case or not.

### C.   DOJ adequately represents the interests of the Movants.

Finally, the Movants cannot satisfy the fourth requirement of Rule 24(a). Courts "will presume that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention." *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir.1993); *Ordnance Container Corp. v. Sperry Rand Corp.*, 478 F.2d 844, 845 (5th Cir. 1973) (adequate representation presumed when the parties' ultimate objectives are identical); *Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967–68 (5th Cir. 1978) (representation adequate precluding intervention where parties' share a common objective). That is exactly the case here: both the DOJ and the Movants seek the same ultimate objective, which is to eliminate the at-large method of election of the members of the Board of Commissioners in Houston County. [Doc. 1 at ¶ 43, Doc. 7-1 at ¶ 2]; *see Stone*, 371 F.3d at 1311.

Sidestepping this common objective, the Movants claim that their complaint is different because they add a few items and because of what they

8

fear a new administration in Washington will do with this case. [Doc. 7 at 6]. This is insufficient to find a lack of adequate representation.

The additional language in the complaint takes two forms. First, the Movants state that their complaint is different from the DOJ's because they name three specific methods of election and claim this to be a "broader range of possible remedies." [Doc. 7 at 4, Doc. 7-1 at ¶ 19]. But the relief sought by the Movants and the DOJ is still the same: to have this Court declare that the current method of election violates the VRA and to impose a remedy that "complies with Section 2 of the VRA." [Doc. 1 at Relief (3); Doc. 7-1 at 9]. Second, the Movants claim that their complaint is different because it adds an allegation against the State of Georgia, that there is a "history of discrimination beyond Houston County." [Doc. 7 at 4 and Doc. 7-1 at ¶ 30]. But this is irrelevant because this § 2 case challenges the *county's* method of election for commissioners, not the *State's*.

Finally, the Movants' speculation about what might happen with a new administration is just that: speculation. While the Movants fear the DOJ will take a new position, it has not done so. Doubtful representation is not enough—the Movants must demonstrate their interests are not represented by the federal government that brought this case and they cannot do so.

None of these purported differences can salvage the motion to intervene. The ultimate objective is the same—to change the method of commission

election in Houston County based on an allegation of vote dilution in violation of § 2.

## II.    This Court should not permit the Movants to intervene permissively.

Rule 24(b) permits courts to allow intervention for anyone who "has a claim" that has a "common question of law or fact" with the main action. Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is within the discretion of the court and even where all the requirements are met, "the court may refuse to allow intervention." *Worlds,* 922 F.2d at 594; *Sterling v. Sellers*, 817 F. App'x 895, 898 (11th Cir. 2020). Permissive intervention may be denied to parties whose interests are identical to those of a party in the underlying lawsuit particularly where it is "unlikely that any new light will be shed on the issues to be adjudicated." *Chiles,* 865 F.2d at 1215.

The factual and statistical allegations in the Proposed Complaint-in-Intervention and the Complaint in the underlying action are the same. *Compare* [Doc. 1 at ¶¶ 12, 14–17, 23–29, 31, 32] *with* [Doc. 7-1 at ¶¶ 13–18, 20–23, 28, 29]. As a result, the Movants' claims do not add any additional material information even if intervention was legally permissible. The Movants can easily be called as witnesses if this case moves forward and present evidence that this Court can consider. And they can do that without

being made parties to the case. Thus, this Court should deny the request for permissive intervention as well.

## CONCLUSION

The Movants and the DOJ seek the same objective—to put an end to at-large commission elections in Houston County. The Movants have no legally protectable interest in the litigation nor will any of their rights be impaired if intervention is not allowed.  The Movants have not shown and cannot show that the DOJ cannot adequately represent their interests. In addition, they do not add any material information that would provide a basis for permissive intervention.  Thus, the Movants are not entitled to intervention as of right or permissive intervention under Rule 24 and this Court should deny the motion to intervene.

Respectfully submitted this 18th day of February, 2025.

*/s/ Bryan P. Tyson*
Bryan P. Tyson
Georgia Bar No. 515411
btyson@clarkhill.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@clarkhill.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@clarkhill.com
**Clark Hill PLC**
3630 Peachtree Road NE
Suite 550

Atlanta, Georgia 30326
678.370.4377 (phone)

*Counsel for Defendants*