IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **United States of America**, | Case No. 5:25-cv-00025-MTT |
| Plaintiff, | |
| vs. | **Movants' Reply in Support of Their Motion to Intervene** |
| **Houston County**, et al.**,** | |
| Defendants. | |

Proposed intervenors Courtney Driver and Mike Jones respectfully submit this reply in support of their motion to intervene. (ECF 7.) Driver and Jones seek intervention by right and by permission. The United States opposes intervention by right but doesn't oppose intervention by permission. (ECF 10.) The Houston County defendants (the "County") oppose both. (ECF 11.)

**I.   Permissive Intervention**

The County doesn't dispute that the movants here satisfy the requirements for permissive intervention. (ECF 11 at 10.) It urges the Court to deny permissive intervention anyway, because "the Movants' claims do not add any additional material information" and because the "Movants can easily be called as witnesses … and present evidence" if this case moves forward. (*Id.*)

But as the County recognizes elsewhere in its response, Driver and Jones do, in fact, seek to offer evidence that will shed a different light on the issues before the Court. (ECF 11 at 9.) Specifically, they intend to offer evidence about a

broader range of possible remedies than the United States currently contemplates. (ECF 7-1 at 5.) And they intend to offer evidence of a history of discrimination that extends beyond Houston County. (*Id.* at 7.)

The County's only response to this additional information is to claim without authority that a history of discrimination by the state legislative body that enacted the statute challenged here is irrelevant because the statute concerns only Houston County. (ECF 11 at 9.) But that makes no sense, and it is well established that "the history of voting-related discrimination in the State or political subdivision" is one factor that is typically probative of a Section 2 violation. *Thornburg v. Gingles,* 478 U.S. 30, 44 (1986); *see also, e.g., United States v. Marengo Cnty. Comm'n*, 731 F.2d 1546, 1568 (11th Cir. 1984) (relying on a history of discrimination by the State of Alabama). The information that Driver and Jones want to add is relevant here, and the County's argument to the contrary has no merit.

There's also no basis for the County's assertion that Driver and Jones can participate in this case without intervening. While the United States could call either of them as lay witnesses, there is no other procedural mechanism by which they could present evidence on issues outside of the United States' complaint. They could not, for example, present an expert witness on possible remedies or the history of voting discrimination in Georgia. Nor could they cross-examine the County's experts on those issues. The only way for them to participate fully in the

case and to raise issues outside of the United States' complaint is by intervening as a party.

Driver and Jones don't seek intervention here to obstruct or to multiply the proceedings. They merely seek to protect the rights of Black voters in Houston County, and it would be unseemly for this Court to exclude Black voters from this case. The movants satisfy the requirements for permissive intervention, and this Court should let them in.

## II.   Intervention as of Right

If the Court grants permissive intervention, it need not address the issue of intervention by right, which both the United States and Houston County oppose. *See, e.g., New Ga. Project v. Raffensperger*, No. 1:21-cv-01229, 2021 WL 2450647, at *2 (N.D. Ga. June 4, 2021) (stating that the court "need not address" intervention by right because it granted permissive intervention). The United States opposes intervention by right because it seeks "the same objectives as the interveners." (ECF 10 at 1 n.1 (quoting *Stone v. First Union Corp.*, 371 F.3d 1305, 1311 (11th Cir. 2004).) Houston County opposes intervention by right for three reasons: (1) the movants have no interest in the outcome of this lawsuit; (2) the movants wouldn't be harmed by their exclusion; and (3) the United States adequately represents the movants' interests. (ECF 11 at 3-10.) The movants address each argument in turn.

A.   **Objectives and Inadequate Representation**

"There is a presumption of adequate representation where an existing party seeks the same objectives as the interveners." *Stone*, 370 F.3d at 1311 (citing *Clark v. Putnam Cnty.*, 168 F.3d 458, 461 (11th Cir. 1999)). That presumption applies here, because, as the County points out, Driver and Jones seek the same ultimate objective as the United States—an election scheme for Houston County that doesn't discriminate against Black voters. (ECF 11 at 8.)

But the presumption can be rebutted. The presumption itself is "weak" and can be overcome if the proposed intervenors "present some evidence to the contrary." *Stone,* 370 F.3d at 1311. That's not a high bar. Once overcome, the proposed intervenors "need only show that the current plaintiff's representation 'may be inadequate,' … and the burden for making such a showing is 'minimal.'" *Id.* (quoting *Clark*, 168 F.3d at 461).

Here, there's ample evidence that the United States' representation of Black voters' interests in this litigation may be inadequate. On January 24, 2025, the Acting Solicitor General submitted a letter in *Louisiana v. Callais*, a voting-rights case in which the United States had filed an amicus brief and had moved for leave to participate in oral argument. The letter served to "notify the Court that the previously filed brief no longer represents the position of the United States" and to withdraw the government's motion to participate in oral argument. *See* Letter of the Acting Solicitor General at 1, *Louisiana v. Callais*, No. 24-109 (U.S. Jan. 24, 2025). Four days later, the United States voluntarily

4

dismissed a voting-rights lawsuit challenging Virginia's voter purge program. *See* Not. Voluntary Dismissal, *United States v. Commonwealth of Virginia*, No. 1:24-cv-1778 (E.D. Va. Jan. 28, 2025) (ECF No. 139). It's no exaggeration to say that the Trump Administration's positions on voting issues appear to be radically different from those of the administration that brought this case.

While such position shifts used to be rare, they are now quite common, and courts have recognized in recent years that a change in presidential administrations satisfies the minimal showing necessary to establish the possibility of inadequate representation. *See, e.g., Kane Cnty. v. United States*, 928 F.3d 877, 895-96 (10th Cir. 2019); *W. Energy All. v. Zinke*, 877 F.3d 1157, 1169 (10th Cir. 2017). And the Trump Administration's early positions in other voting cases raise a substantial possibility that it may not adequately represent the interests of Black voters here.

**B.     The Movants' Interests**

The County argues that Driver and Jones don't have an interest in this litigation for two reasons: (1) there's no private right of action under the Voting Rights Act; and (2) Driver and Jones haven't shown that they live in an area that would be included in a majority-minority district if they win. (ECF 11 at 3-7.)

**1.     Private Right of Action**

The County first argues that Driver and Jones lack a protectible interest in this proceeding "because § 2 of the VRA does not provide a private right of action." (ECF 11 at 3.) More specifically, the County points out that the United

States brought this action under Section 12 of the Voting Rights Act, 52 U.S.C. § 10308(d), which expressly authorizes the Attorney General to enforce Section 2 but which, according to the County, "does not confer a private right of action on individuals." (ECF 11 at 3.) That argument is beside the point for two reasons.

First, in addition to asserting an implied right of action under Section 12, Jones and Driver have asserted a right of action under 42 U.S.C. § 1983, which expressly provides a private right of action to enforce rights, privileges, or immunities secured by the Constitution and laws of the United States. (ECF 7-1 at 2.) Section 1983 provides a right of action here even if Section 12 does not, and the County doesn't argue otherwise. *See Singleton v. Allen*, 740 F. Supp. 3d 1138, 1169 (N.D. Ala. 2024) (holding that private plaintiffs may enforce Section 2 through Section 1983); *Turtle Mountain Band of Chippewa Indians v. Jaeger*, No. 3:22-cv-22, 2022 WL 2528256, at *3-*6 (D.N.D. July 7, 2022) (same), *appeal pending*, No. 23-2655 (8th Cir. argued Oct. 22, 2024); *see also Schweier v. Cox*, 340 F.3d 1284, 1294-97 (11th Cir. 2003) (holding that private plaintiffs may enforce a different section of the Voting Rights Act under Section 1983). Accordingly, the Court need not even consider whether private plaintiffs have an implied right of action to enforce Section 2 under Section 12 of the Voting Rights Act because it's undisputed that they have one under Section 1983.

Second, a private right of action isn't even required for intervention as of right. All that's required under Rule 24(a)(2) is a "protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). The interest need not "be of

6

a legal nature identical to that of the claims asserted in the main action." *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1125–26 (5th Cir. 1970). Rather, the proposed intervenors "must be at least real parties in interest in the transaction which is the subject of the proceeding." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213-14 (11th Cir. 1989) (cleaned up). "[I]n cases challenging various statutory schemes as unconstitutional or as improperly interpreted and applied, the courts have recognized that the interests of those who are governed by those schemes are sufficient to support intervention." 7C Charles Alan Wright, Arthur Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1908.1 (3d ed.).

The Eleventh Circuit's decision in *Chiles* is particularly instructive here. In that case, several excludable aliens sought to intervene as of right in a suit against the Attorney General to challenge the constitutionality of their confinement at a Florida detention camp. The court noted that it was "unclear" whether the detainees were protected by the Constitution. 865 F.2d at 1203 n.6. Even so, the court found "no doubt that the detainees satisfy the interest requirement of Rule 24(a)(2)" because they sought to challenge the conditions of their own confinement. *Id.* at 1214. "By any imaginable yardstick, the detainees have a 'direct, substantial, legally protectible interest' in the lawsuit" brought by others challenging the operation of the detention camp. *Id.*

So too here. Even if Driver and Jones couldn't bring this case on their own, they would still satisfy the interest requirement of Rule 24(a)(2) because, like the detainees in *Chiles*, they want to challenge the lawfulness of a government action

7

that applies directly to them. The County's private-right-of-action argument is therefore beside the point.

Finally, even though this Court need not address the County's private-right-of-action argument for the reasons just discussed, that argument is ill-founded anyway. The County relies primarily on an Eighth Circuit opinion that has been roundly criticized. (ECF 11 at 4 (citing *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204 (8th Cir. 2023).) *See, e.g., Singleton*, 740 F. Supp. 3d at 1156-69 (finding a private right of action under the Voting Rights Act); *Miss. State Conf. NAACP v. State Bd. of Election Comm'rs,* 739 F. Supp. 3d 383, 409-12 (N.D. Miss. 2024) (three-judge district court) (same); *Ga. State Conf. NAACP v. Ga.,* No. 1:21-CV-5338, 2022 WL 18780945, at *2-*7 (N.D. Ga. Sept. 26, 2022) (three-judge district court) (same); *Pendergrass v. Raffensperger*, No. 1:21-CV-05339, 2022 WL 1518234, at *6-*7 (N.D. Ga. 2022) (same), *appeal pending,* No. 23-13916 (11th Cir. argued Jan. 23, 2025); *see also* Br. of the United States, *Alpha Phi Alpha Fraternity, Inc. v. Secretary, State of Ga.*, No. 23-13914 (11th Cir. Apr. 8, 2024) (ECF No. 59). These cases persuasively explain why *Arkansas* was wrongly decided and why private plaintiffs have an implied right of action under the Voting Rights Act. If this Court wishes to address the County's private-right-of-action argument—*and it should not*—it should follow those cases rather than the *Arkansas* outlier.

8

### 2. The Movants' Residence

To demonstrate an injury-in-fact for purposes of a vote dilution claim, plaintiffs must show that they (1) reside and are registered voters in the area where alleged dilution occurred, and (2) are members of a protected class whose voting strength was diluted. *Broward Citizens for Fair Dists. v. Broward Cnty.*, No. 12-60317-CIV, 2012 WL 1110053, at *3 (S.D. Fla. Apr. 3, 2012) (collecting cases). Here, Driver and Jones allege that they are Black registered voters in Houston County, which is where the alleged vote dilution is occurring because of the county's at-large method of election. That's enough to establish constitutional standing, and it's enough of an interest to support intervention. *See, e.g., Rose v. Raffensperger*, 511 F. Supp. 1340, 1352 (N.D. Ga. 2021) (holding that Black registered voters had standing to challenge the at-large method of electing Georgia's Public Service Commission).

The County suggests that the movants must allege that they live in an area where a majority-Black district could be drawn. (ECF 11 at 6-7.) But there's no authority for the County's argument. And, since the remedy here isn't predetermined (and could even include county-wide remedies, as the movants allege in their proposed complaint), such a requirement would be premature in any event.

### C. Harm By Exclusion

Lastly, the County argues that the movants' rights won't be impaired by their exclusion from the case "because they could not bring this case in the first

9

place and the DOJ has significant government resources to litigate this case." (ECF 11 at 8.) But this intervention factor isn't about a private right of action or an existing litigant's resources. It's about whether the proposed interventors would face some practical disadvantage because of their exclusion from the proceedings. *Huff v. Comm'r of IRS*, 743 F.3d 790, 800 (11th Cir. 2014). And here, the movants would be disadvantaged by their exclusion because there can be only one method of electing the Houston County Board of Commissioners. This case is the whole ballgame. Either Black voters are in, or Black voters are out.

      Houston County says that Driver and Jones "will have the same say in the method of electing their county government, whether they are part of this case or not." (ECF 11 at 8 (cleaned up).) But, as already discussed above, there is no procedural mechanism other than intervention for the movants to participate fully in this case and to present evidence that goes beyond the United States' complaint. As a practical matter, then, excluding the movants from these proceedings would mean that Black voters in Houston County will have no say in the method of electing their county commissioners.

Respectfully submitted this 2nd day of March, 2025.

**/s/ *Bryan L. Sells*
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212 (voice/fax)
bryan@bryansellslaw.com


**/s/ *Lynsey M. Barron*
Georgia Bar No. 661005
Barron Law LLC
1800 Peachtree St. NE, Suite 300
Atlanta, Georgia 30309
404-276-3261
lynsey@barron.law


*Attorneys for the Movants*

11