IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>HOUSTON COUNTY, *et al.*,<br><br>*Defendants.* | Civil Action No. 5:25-cv-0025-MTT |

**COUNTY DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO
DISMISS COMPLAINT-IN-INTERVENTION**

## INTRODUCTION

This case began as an enforcement action by the Attorney General through the Department of Justice (DOJ) against Houston County and the members of its Board of Commissioners in their official capacities under § 2 of the Voting Rights Act (VRA). [Doc. 1]. But on March 24, 2025, the DOJ voluntarily dismissed its claims against the County and its commissioners. [Doc. 20].

That leaves the Complaint-in-Intervention. [Doc. 14] (referred to here as the Complaint). Before the DOJ dismissed its claims, this Court granted the motion to intervene filed by Plaintiff-Intervenors Courtney Driver and Michael C. Jones, which resulted in the remaining active Complaint against Houston County, the individual members of the Board of Commissioners,[1] the Board of Elections, and its chair in her official capacity. [Doc. 14 at ¶¶ 7–10]. Like the DOJ, Plaintiff-Intervenors claim that the current at-large method of election of the five-member Board of Commissioners of Houston County violates § 2 of the VRA. But unlike the Attorney General, Plaintiff-Intervenors are individual voters in Houston County. [Doc. 14 at ¶¶ 5–6].

---

[1] This brief addresses only the claims in Plaintiff-Intervenors' Complaint [Doc. 14] against the County and the members of the Board of Commissioners (the County Defendants). The newly added Board of Election Defendants (the Board and its chair) separately waived service and will respond to the Complaint by the 60-day deadline of May 5, 2025.

While the Attorney General has a right to enforce § 2 of the VRA, private individuals do not. 52 U.S.C. § 10308(d). Plaintiff-Intervenors are only proceeding as private individuals, and as a result, their Complaint fails to properly invoke this Court's jurisdiction or to state a claim upon which relief can be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Further, even if this Court has jurisdiction, Houston County and the individual members of the Board of Commissioners should be dismissed as parties because they do not administer elections.

## ARGUMENT AND CITATION OF AUTHORITY

When considering motions to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) attacking the sufficiency of the allegations of the complaint, a court need not look beyond the complaint and all the allegations contained therein "are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (internal citations omitted). And "[o]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

Similarly, to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 677 (2009). While this Court must assume the veracity of well-pleaded factual allegations, it is not required to accept legal conclusions when they are "couched as [] factual allegation[s]." *Id.* at 678–79.

## I.     This Court lacks subject matter jurisdiction.

Plaintiff-Intervenors allege they are residents of Houston County and registered voters. [Doc. 14 at ¶¶ 5–6]. And they seek to invoke this Court's jurisdiction under 42 U.S.C. § 1983 and the VRA, specifically 52 U.S.C. § 10308(f). *Id.* at ¶ 3. But neither provides an avenue for private parties to sue over potential violations of § 2.

### A.     There is no private right of action to enforce § 2.

Courts have frequently assumed a private right to enforce § 2, but it remains an "open question," because the Supreme Court has not decided that such a right exists. *Brnovich v. Democratic National Committee*, 594 U.S. 647, 689 (2021) (Gorsuch, J., concurring). The Eighth Circuit, in the only thoroughly reasoned circuit court opinion on the issue, decided there was none. *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204 (8th Cir. 2023). There, the court found that § 2 provides no express cause of action for private plaintiffs, and that the text and structure of the VRA make it clear that Congress did not intend to implicitly create one. *Id.* at 1206–07. And courts may not judicially "create one, no matter how desirable that might be as a policy matter." *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001). Instead,

3

"[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Id.* at 286 (citation omitted). To determine whether Plaintiff-Intervenors have a cause of action, courts must look to "the statute Congress has passed." *Id.* And as with all statutory interpretation, text and structure are key. *Id.* at 288. But at bottom, there are two overarching reasons why federal courts must exercise restraint in crafting implied private rights of action notwithstanding the lengthy practice of assuming such a right with respect to § 2.

> 1. *Statutory construction principles demonstrate a lack of a private right of action.*

The first reason relies on statutory construction principles. It is an "elemental canon" of statutory interpretation that "where a statute expressly provides a remedy, courts should be 'reluctant' to imply anything else." *Ark. State Conf. NAACP*, 86 F.4th at 1210 (quoting *Karahalios v. Nat'l Fed'n of Fed. Emps., Loc. 1263,* 489 U.S 527, 533 (1989)) (cleaned up). In other words, "[t]he express provision of one method of enforcing a substantive rule suggests Congress intended to preclude others." *Sandoval,* 532 U.S. at 290. And it is not the role of federal courts to imply a private right of action into an expansive enforcement scheme like that set forth in the VRA when Congress could have easily done so itself. "Atextual judicial supplementation is particularly inappropriate when… Congress has shown that it knows how to adopt the

4

omitted language or provision." *Lackey v. Stinnie*, 145 S. Ct. 659, 669 (2025) (quoting *Rotkiske v. Klemm,* 589 U.S. 8, 14 (2019)).

    2. *Federal courts cannot imply a private right of action.*

The second reason is more fundamental: federal courts simply lack the authority to imply a private right of action when the remedial scheme has already been clearly set forth by Congress. "Raising up causes of action where a statute has not created them may be a proper function of common-law courts, but not for federal tribunals." *Sandoval,* 532 U.S. at 287 (quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 365 (1991) (Scalia, J., concurring in part and concurring in judgment)). Thus, even if this Court felt that including a private right of action was wise as a policy matter, it is constrained by its limited grant of authority under Article III. Turning to the VRA, a close examination of its structure evinces a scheme deliberately devoid of a private right of action to enforce § 2.

First, § 2 itself contains no express cause of action. *See Morse v. Republican Party of Va.,* 517 U.S. 186, 232 (1996) (plurality); 52 U.S.C. § 10301. In a bygone era, federal courts would liberally read causes of action into statutes to effectuate the courts' loose view of "congressional purpose." *J.I. Case Co. v. Borak,* 377 U.S. 426, 433 (1964). But the Supreme Court has long since "sworn off the habit…" *Sandoval,* 532 U.S. at 287; *see also Egbert v. Boule,* 596 U.S. 482, 491 (2022) (repudiating "the heady days in which [the

5

Supreme] Court assumed common-law powers to create causes of action" (quotation omitted)). "[C]reating a cause of action is a legislative endeavor," requiring a careful cost-benefit analysis for which courts are ill-equipped. *Egbert*, 596 U.S. at 491.

Further, the textual evidence here shows that Congress repeatedly avoided creating a private cause of action to enforce § 2 despite having multiple opportunities to do so. Instead, in § 12 of the Act, Congress expressly empowered the Attorney General to enforce § 2 and numerous other provisions through criminal and civil actions. 52 U.S.C. § 10308(d). That is what the DOJ did in this case before deciding to dismiss its claims. But § 12, like § 2, says nothing about private plaintiffs or private remedies. And that omission is critical. Because as already noted, it is a well-established maxim of statutory interpretation that "[t]he express provision of one [cause of action] suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290. And the Supreme Court has instructed that it ultimately "Congress's job to *craft* policy and ours to *interpret* the words that codify it." *Lackey*, 145 S. Ct. at 669 (emphasis added).

In the specific context of considering whether a private right of action exists for a particular statutory claim, the inclusion of another cause of action in the statutory scheme is entitled to such great weight that it may "preclude[]" a "private right of action, even though other aspects of the statute ... suggest

6

the contrary." *Sandoval,* 532 U.S. at 290 (citation omitted). That is because "the interpretive inquiry begins with the text and structure of the statute and ends once it has become clear that Congress did not provide a cause of action." *Id.* at 288 n. 7 (cleaned up). The VRA is a multi-pronged statute with a detailed enforcement process. *See* 52 U.S.C. §§ 10302, 10308, 10310. When Congress, in such a "comprehensive legislative scheme," opts to specify *public* enforcement, the only permissible inference is that the *private* remedy was "deliberately omitted." *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 147 (1985) (quotation omitted). And it is not the role of federal courts to imply a private right of action into such an expansive enforcement scheme when Congress could have easily done so itself. *See, e.g.*, *Lackey,* 145 S. Ct. at 669.

Indeed, "[i]f the 1965 Congress 'clearly intended' to create a private right of action, then why not say so in the statute? If not then, why not later, when Congress amended § 2?" *Ark. State Conf. NAACP*, 86 F.4th at 1214. The readily apparent reason is that Congress vested enforcement power in the Attorney General instead of private parties—power the Attorney General exercised and then withdrew in this case. Without a private right of action, this Court lacks jurisdiction to hear Plaintiff-Intervenors' claim and their Complaint should be dismissed in its entirety.

**B.     Section 1983 does not save Plaintiff-Intervenors' claim.**

Plaintiffs have another plan if there is no private right of action under the VRA, because they include 42 U.S.C. § 1983 as a basis for their claims. [Doc. 14 at ¶ 3]. While the Eighth Circuit did not consider the inclusion of a § 1983 claim when it evaluated the lack of a private right of action, *Ark. State Conf. NAACP*, 86 F.4th at 1218, including a reference to that section in the Complaint does not save Plaintiff-Intervenors' case.

In order "to sustain a § 1983 action, the plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs." *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 120 (2005). As discussed above, there is no individually enforceable right under the VRA that Plaintiff-Intervenors can exercise.

But even if there was, Congress can still foreclose the use of § 1983 either in the statutory text or "impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing v. Freestone*, 520 U.S. 329, 341 (1997). As discussed above, the VRA contains just such a comprehensive enforcement process through the Attorney General. *See* Section I.A. *above*; 52 U.S.C. §§ 10302, 10308, 10310. As a result, by not creating a private right of action, "Congress did not intend" for the VRA to be enforced through § 1983. *City of Rancho Palos Verdes*, 544 U.S. at 121;

8

*Sandoval*, 532 U.S. at 290 ("[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.").

Because of the comprehensive scheme created by the statute to be enforced by the Attorney General—power he specifically chose not to use in this case—Plaintiff-Intervenors cannot assert a claim under § 2 of the VRA through § 1983.

## II. Plaintiff-Intervenors fail to state a claim because they never allege where they live in the county.

Unlike racial gerrymandering claims, which challenge specific district boundaries, *see United States v. Hays*, 515 U.S. 737, 745 (1995), § 2 vote-dilution claims challenge the lack of majority-minority districts in the "*area* as a whole." *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 504 (2006) (Roberts, C.J., concurring in part and dissenting in part) (emphasis added). While Plaintiff-Intervenors allege they live in Houston County, [Doc. 14 at ¶¶ 5–6], they never allege they live in an area of the County where a majority-Black district could be drawn or that such a district could be drawn in their portion of the County. As a result, they have not shown they have an interest that could be addressed by this lawsuit and thus have failed to state a claim upon which relief can be granted.[2]

---

[2] While Plaintiff-Intervenors do not have "the right to be placed in a majority-[Black] district once a violation of the statute is shown," *Shaw v.*

9

### III. Claims against Houston County and the Board of Commissioners should be dismissed.

Even if Plaintiff-Intervenors have stated a claim, they have still sued the wrong parties. That is because the requirements of standing under Article III of the U.S. Constitution are not met in this case as to the County Defendants.

### A. Standing requires claims that are traceable to or redressable by the defendants.

"Federal courts have an independent obligation to ensure that subject-matter jurisdiction exists before reaching the merits of a dispute." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020). "Absent a justiciable case or controversy between interested parties, [federal courts] lack the 'power to declare the law.'" *Wood v. Raffensperger*, 981 F. 3d 1307, 1313 (11th Cir. 2020) (quoting *Steel Co. v. Citizens for A Better Env't*, 523 U.S. 83, 94 (1998)). This is because "[t]he Constitution makes clear that federal courts are courts of limited jurisdiction." *Id.* at 1310 (citing U.S. CONST. Art. III). Given this Court's limited jurisdiction, plaintiffs must demonstrate "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson*, 974 F.3d at 1245. And

---

*Hunt*, 517 U.S. 899, 917 n.9 (1996), they still must allege that they have at least the potential to be placed in such a district.

"[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992).

The key questions for traceability and redressability "are who caused the injury and how it can be remedied." *City of S. Miami v. Gov. of Fla.*, 65 F.4th 631, 640 (11th Cir. 2023). Courts ask the latter question because "[f]ederal courts have no authority to erase a duly enacted law from the statute books." *Jacobson,* 974 F.3d at 1255 (quoting Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933, 936 (2018)). Instead, they possess only the more limited authority to "enjoin executive officials from taking steps to enforce a statute." *Id.* And even then, they "exercise that power *only* when the officials who enforce the challenged statute are made parties to the suit." *Id.* (emphasis added).

To establish redressability, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan,* 504 U.S. at 61 (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 38, 43 (1976)). Even if an order from this Court might persuade the correct non-parties to follow its injunction, that is not enough. "Redressability requires that the court be able to afford relief *through the exercise of its power,* not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." *Lewis v. Governor of Alabama,* 944 F. 3d 1287, 1305 (11th Cir. 2019)

11

(en banc) (quoting *Franklin v. Massachusetts,* 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in the judgment)) (emphasis original).

Further, any "injury cannot 'result [from] the independent action of some third party not before the court.'" *Anderson v. Raffensperger*, 497 F. Supp. 3d 1300, 1328 (N.D. Ga. 2020) (quoting *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011)). And "traceability does not exist where 'an independent source would have caused [plaintiff] to suffer the same injury.'" *Id.* (quoting *Swann v. Sec'y, Georgia*, 668 F.3d 1285, 1288 (11th Cir. 2012)).

### B. Neither Houston County itself nor its Board of Commissioners conduct elections in Houston County.

In Georgia, county boards of election administer elections. O.C.G.A. § 21-2-70. Multiple courts have confirmed that boards "are charged under Georgia law with the responsibility of administering [] elections." *Georgia Shift v. Gwinnett Cnty.,* No. 1:19-CV-01135-AT, 2020 WL 864938, at *5 (N.D. Ga. Feb. 12, 2020); *see also Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1108 (11th Cir. 2022); *Fair Fight Action, Inc. v. Raffensperger*, No. 1:18-CV-5391-SCJ, 2021 WL 9553855, at *11 (N.D. Ga. Feb. 16, 2021). This is true in Houston County as well, where the administration of elections is carried out by the Board of Elections. O.C.G.A. §§

21-2-2(35)(A) and 21-2-70; Houston County, Ga., Code, Ch. 2, Article III, Div. 10, § 2-258 (creation of county board of elections).

County governing authorities, on the other hand, such as the county itself or the board of commissioners, do not administer or supervise elections.[3] Plaintiff-Intervenors know this because they have named Houston County election officials, but they also named the County and the Board of Commissioners, seeking an injunction to prevent "any future elections for members of the Houston County Board of Commissioners using the current method of election." [Doc. 14 at 9]. That kind of an injunction would prove futile as to the County Defendants because they are not the "officials who enforce the challenged" practice. *Jacobson*, 974 F.3d at 1255. Thus, the Complaint does not satisfy the redressability requirement that "a court decision… either eliminate the [alleged] harm or compensate for it" as to the County Defendants. *Muransky v. Godiva Chocolatier, Inc.,* 979 F.3d 917, 924 (11th Cir. 2020) (en banc).

Plaintiff-Intervenors' claims in this case are not redressable by or traceable to either Houston County or its Board of Commissioners. Without these key elements of standing, this Court lacks subject matter jurisdiction over the County Defendants. Thus, to the extent the Court does not dismiss the entire

---

[3] Houston County's method of election was set by the Georgia General Assembly, not by Houston County. *See* 1970 GA. LAWS, page 2962–63 § 2 (most recent amendment regarding method of election).

13

Complaint based on standing, it should at least dismiss Houston County and the members of its Board of Commissioners as defendants.

## CONCLUSION

The Attorney General abandoned the claim that the countywide method of voting in Houston County violates the VRA. Plaintiff-Intervenors cannot continue that quest in the Attorney General's stead because private parties have no ability to bring claims under § 2 or by way of 42 U.S.C. § 1983. But even if this Court determines that the private claims can go forward, it must dismiss Houston County and the members of its Board of Commissioners because they do not administer elections and cannot provide any relief to the Plaintiff-Intervenors.

Respectfully submitted this 26th day of March, 2025.

*/s/ Bryan P. Tyson*
Bryan P. Tyson
Georgia Bar No. 515411
btyson@clarkhill.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@clarkhill.com
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@clarkhill.com
**Clark Hill PLC**
3630 Peachtree Road NE
Suite 550
Atlanta, Georgia 30326

678.370.4377 (phone)

*Counsel for County Defendants*

15