# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

COURTNEY DRIVER, *et al.*,

    *Plaintiffs*,

       v.

HOUSTON COUNTY BOARD OF
ELECTIONS, *et al.*,

    *Defendants*.

Civil Action No. 5:25-cv-0025-MTT

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## INTRODUCTION

This case began when the Attorney General, through the Department of Justice (DOJ), sued Houston County and the members of its Board of Commissioners under § 2 of the Voting Rights Act (VRA). [Doc. 1]. But DOJ later voluntarily dismissed its claims against the County and its commissioners. [Doc. 20]. Plaintiffs[1] now seek to push this case forward without DOJ, asserting the same challenge to the at-large method of election of county commissioners, but proceeding against the Houston County Board of Elections (BOE) and its chair, Pamela Morgan in her official capacity (collectively, the Defendants). But the current Defendants were not part of the action brought by DOJ. [Doc. 14]. So, while this case began as one plaintiff (the United States) against one group of defendants (the County and county officials), it is now proceeding with a different set of Plaintiffs (Driver and Jones) against a different group of Defendants (the BOE and its chair).

While the Attorney General has an express statutory right to enforce § 2 of the VRA, private individuals notably lack such an authorization. 52 U.S.C. § 10308(d). With the Attorney General out and no longer pursuing this case, Plaintiffs now seek to proceed exclusively as private parties. But their

---

[1] This Court previously permitted Courtney Driver and Michael Jones to intervene. [Doc. 13]. Then, by text order dated April 15, 2025, the Court redesignated Driver and Jones as Plaintiffs in this case. [Doc. 25].

Complaint fails to properly invoke this Court's jurisdiction or to state a claim upon which relief can be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## ARGUMENT AND CITATION OF AUTHORITY

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). While this Court must assume the veracity of well-pleaded factual allegations, it is not required to accept legal conclusions when they are "couched as [] factual allegation[s]." *Id*. at 678–79. In addition to the Complaint, this Court may consider any matters appropriate for judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).

## I.    As private parties, Plaintiffs cannot bring a § 2 case.

Plaintiffs allege they are residents of Houston County and registered voters. [Doc. 14 at ¶¶ 5–6]. And they seek to invoke this Court's jurisdiction under 42 U.S.C. § 1983 and the VRA, specifically 52 U.S.C. § 10308(f). *Id*. at ¶ 3. But neither provides an avenue for private parties to sue over potential violations of § 2.

### A.    There is no private right of action to enforce § 2.

Courts have frequently assumed a private right to enforce § 2, but it remains an "open question," because the Supreme Court has never directly addressed whether such a right exists. *Brnovich v. Democratic National Committee*, 594 U.S. 647, 689 (2021) (Gorsuch, J., concurring). The Eighth Circuit, in the only thoroughly reasoned circuit court opinion on the issue,[2] concluded there was none. *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204 (8th Cir. 2023). There, the court found that § 2 provides no express cause of action for private plaintiffs, and that the text and structure of the VRA make it clear that Congress did not intend to implicitly create one. *Id.* at 1206–07. Without a textual basis for a private cause of action, courts are left to look for one by implication.

But the Supreme Court has clearly stated that courts may not judicially "create [a private right of action], no matter how desirable that might be as a

---

[2] Other circuits that have addressed the issue have done so with little, if any, analysis. *See, e.g.*, *Mixon v. State of Ohio*, 193 F.3d 389, 406 (6th Cir. 1999) (no analysis); *Robinson v. Ardoin*, 86 F.4th 574, 588 (5th Cir. 2023) (relying on sovereign immunity ruling in *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017)). The only Eleventh Circuit case on the issue likewise held in cursory fashion that § 2 could be enforced by private parties thanks to the "aggrieved person" language contained in § 3, but the decision is not binding because it was vacated by the United States Supreme Court. *Alabama State Conference of the NAACP vs. Alabama*, 949 F.3d 647, 652 (11th Cir. 2020) *vacated by* 141 S. Ct. 2618 (2021).

policy matter." *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001). Instead, "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Id.* at 286 (citation omitted). To determine whether Plaintiffs have a cause of action, courts must look to "the statute Congress has passed." *Id.* And as with all statutory interpretation, text and structure are key. *Id.* at 288. But here, the text plainly lacks a private cause of action. Plaintiffs (and courts) must therefore look elsewhere for support.

1.     *The statute is devoid of any textual hook creating a private right of action to enforce § 2.*

The first reason there is no private right of action to enforce § 2 is the text itself. "The Voting Rights Act lists only one plaintiff who can enforce § 2: the Attorney General." *Ark. State Conf. NAACP,* 86 F.4th at 1208. And it is an "elemental canon" of statutory interpretation that "where a statute expressly provides a remedy, courts should be reluctant to imply anything else." *Id.* at 1210 (cleaned up) (citing *Karahalios v. Nat'l Fed'n of Fed. Emps., Loc. 1263,* 489 U.S. 527, 533 (1989)). In other words, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval,* 532 U.S. at 290.

Turning to the text, § 2 of the VRA contains just two subsections, neither of which mention a private right of action. 52 U.S.C. § 10301. "Of course, Congress is not required to place a remedy in every provision of every statute

it passes," and reviewing courts should "consider the text and structure of the entire Act when analyzing whether the Act manifests an intent to create a private remedy." *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment,* 586 F. Supp. 3d 893, 907–08 (E.D. Ark. 2022) (cleaned up). But looking at the VRA as a whole only further cements the reality that private plaintiffs cannot bring a claim under § 2.

For example, as the *Ark. State Conf. NAACP* district court recently pointed out, subsections (a) and (c) of § 12 of the VRA provide that "anyone who violates, attempts to violate, or conspires to violate §§ 2, 3, 4, 5, 10, or 11 of the Act shall be fined up to $5,000 and/or be imprisoned for up to five years." *Id.* at 908 (citing 52 U.S.C. § 10308). It certainly strains credulity to suggest that "Congress intended for private enforcement of such *fines* and *imprisonment*." *Id.* (emphasis added). Moreover, the VRA further provides that if "a violation of § 2 is forthcoming, § 12(d) affirmatively authorizes *the Attorney General* of the United States to seek a preliminary or permanent injunction to prevent the violation." *Id.* (emphasis added).

In the face of these affirmative enforcement grants to the Attorney General, one would expect an affirmative grant to private parties would be included *if* Congress intended to authorize private plaintiffs to sue under § 2. But no such grant exists anywhere in the VRA even when combing through the "large and complex" reaches of the statute. *Id.*

One might point to § 3 as a possible entry point for private plaintiffs,[3] because that provision provides various forms of relief "[w]henever the Attorney General *or an aggrieved person* institutes a proceeding under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment in any State or political subdivision." 52 U.S.C. § 10302(a) (emphasis added). But the reference to an "aggrieved person" can't bear the weight Plaintiffs need from it, especially considering that it was added as an amendment to the original VRA of 1965.

"As originally enacted, § 3 did not include the phrase, 'or an aggrieved person,' which became a problem as courts started to recognize that some voting rights were privately enforceable." *Ark. State. Conf. NAACP,* 86 F.4th at 1211. But § 3 is not rights *creating* language. Rather, it simply acknowledges a cause of action where a private right already exists. Indeed, "[t]he next phrase after 'aggrieved person' mentions 'a proceeding under *any statute,*' which most reasonably refers to statutes that *already* allow for private lawsuits." *Id* (emphasis added). "The most logical deduction" from the change made by Congress here "is that Congress meant to address those cases brought pursuant to the private right[s] of action" that already existed or would later

_____

[3] Indeed, this is where the vacated Eleventh Circuit decision looked, but that approach is wrong for the reasons described here. *Alabama State Conference of the NAACP*, 949 F.3d at 651.

be created. *Morse v. Republican Party of Va.,* 517 U.S. 186, 289 (1996) (Thomas, J., dissenting, joined by three other Justices). Moreover, "Congress typically does not 'hide elephants in mouseholes.'" *Turkiye Halk Bankasi A.S. v. United States,* 598 U.S. 264, 274 (2023) (quoting *Whitman v. American Trucking Assns., Inc.,* 531 U.S. 457, 468 (2001)). It "knows how to create a cause of action, and it did not do so here." *Ark. State Conf. NAACP,* 86 F.4th at 1213 (cleaned up) (citing *Hernandez v. Mesa,* 140 S. Ct. 735. 752 (2020)).

In the absence of any indicia of a private right of action to enforce § 2 in the text of the VRA, courts have been left to assume (or imply) one. But this practice is not just disfavored, it is beyond this or any federal court's authority. Indeed, it is simply not the role of federal courts to imply a private right of action into a comprehensive enforcement scheme like that set forth in the VRA when Congress could have easily done so itself. "Atextual judicial supplementation is particularly inappropriate when... Congress has shown that it knows how to adopt the omitted language or provision." *Lackey v. Stinnie*, 145 S. Ct. 659, 669 (2025) (quoting *Rotkiske v. Klemm,* 589 U.S. 8, 14 (2019)).

### 2.    *Federal courts cannot imply a private right of action.*

The second reason there is no private right action to enforce § 2 is more fundamental: federal courts lack the authority to imply one when the remedial scheme has already been clearly set forth by Congress. "Raising up causes of

action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." *Sandoval,* 532 U.S. at 287 (quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 365 (1991) (Scalia, J., concurring in part and concurring in judgment)). "The ultimate question is one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979).

Thus, even if this Court felt that including a private right of action was wise as a policy matter, it is constrained by its limited grant of authority under Article III. Again, creating private rights of action is the job of Congress. And the structure of the VRA evinces a scheme deliberately devoid of a private right of action to enforce § 2.

As already discussed above, courts broadly agree that § 2 itself contains no express cause of action. *See Morse*, 517 U.S. at 232 (plurality); *Robinson*, 86 F.4th at 587 ("There is no cause of action expressly created in the text of Section 2."); 52 U.S.C. § 10301. In a bygone era, federal courts would liberally read causes of action into statutes to effectuate the courts' loose view of "congressional purpose." *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964). But the Supreme Court has long since "sworn off the habit…" *Sandoval*, 532 U.S. at 287; *see also Egbert v. Boule*, 596 U.S. 482, 491 (2022) (repudiating "the heady days in which [the Supreme] Court assumed common-law powers to

create causes of action" (quotation omitted)). "[C]reating a cause of action is a legislative endeavor," and requires a careful cost-benefit analysis courts are ill-equipped to conduct and should not undertake. *Egbert*, 596 U.S. at 491.

Further, the textual and historical evidence here shows that Congress repeatedly declined to create a private cause of action to enforce § 2 despite having multiple opportunities to do so. In *City of Mobile v. Bolden,* for example, the Supreme Court flagged the issue of whether Congress created a private right of action to enforce § 2 by only assuming its existence. 446 U.S. 55, 60 (1980). And although the result of that decision prompted Congress to spring into action less than two years later to specifically amend § 2 for other purposes, no rights-creating language was added. The silence of Congress on this specific point speaks volumes.[4]

And while the VRA broadly mentions rights of voters, it does not confer a vehicle for those voters to activate this right. This matters because a mere *reference* to a right in a statute does not confer that right much less create a

---

[4] The Senate Report to the 1982 amendments to the VRA does state that "*the Committee* reiterates the existence of the private right of action under Section 2, as has been clearly intended by Congress since 1965." S. Rep. No. 97-417, at 30 (emphasis added). But this "legislative history does not complete the statutory story. Rather, it tells a different story, one not reflected in the text of anything Congress passed." *Ark State Conf. NAACP*, 86 F.4th at 1214. Moreover, for a court to treat "these statements as anything more than the opinions of just a few legislators would circumvent the Article I process." *Id.* (internal quotations omitted).

private right of action. To the contrary, "[u]nder the modern test for implied rights of action, Congress must have *both* created an individual right *and* given private plaintiffs the ability to enforce it." *Ark. State Conf. NAACP,* 86 F.4th at 1209. That is why "'[i]n the absence of strong indicia of contrary congressional intent, [courts] are compelled to conclude that Congress provided precisely the remedies it considered appropriate.'" *Karahalios,* 489 U.S. at 532–33 (1989) (quoting *Middlesex County Sewerage Authority v. Sea Clammers*, 453 U.S. 1, 15 (1981)).

Finally, the comprehensive remedial scheme in the VRA also counsels against implying a private right of action for § 2. As already noted, it is an established maxim of statutory interpretation that "[t]he express provision of one [cause of action] suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290. And the Supreme Court has instructed that it is ultimately "Congress's job to *craft* policy and ours to *interpret* the words that codify it." *Lackey*, 145 S. Ct. at 669 (emphasis added).

The VRA is a multi-pronged statute with a detailed enforcement process. *See* 52 U.S.C. §§ 10302, 10308, 10310. When Congress provides such a "comprehensive legislative scheme," and opts to specify *public* enforcement, the only permissible inference is that the *private* remedy was "deliberately omitted." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985) (quotation omitted). And it is not the role of federal courts to imply a private

10

right of action into such an expansive enforcement scheme when Congress could have easily done so itself and did not. *See Lackey,* 145 S. Ct. at 669.

Indeed, "[i]f the 1965 Congress 'clearly intended' to create a private right of action, then why not say so in the statute? If not then, why not later, when Congress amended § 2?" *Ark. State Conf. NAACP*, 86 F.4th at 1214. The readily apparent reason is that Congress vested enforcement power in the Attorney General instead of private parties—power the Attorney General exercised and then withdrew in this case. Without a private right of action, this Court lacks jurisdiction to hear Plaintiffs' § 2 claim and that claim must be dismissed.

## B.   Section 1983 does not save Plaintiffs' claim.

Plaintiffs also assert a claim under 42 U.S.C. § 1983. [Doc. 14 at ¶ 3]. Section 1983 is a vehicle for enforcing "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. And "by its terms, as well as its history, [§ 1983] does not provide any rights at all." *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 618 (1979). "[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Id.* at 617. Rather, § 1983 is merely "a mechanism for enforcing individual rights 'secured' elsewhere," either in the Constitution or under federal law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

When the Eighth Circuit evaluated the lack of a private right of action to enforce § 2 (as discussed above), it did not consider the inclusion of a § 1983 claim. *Ark. State Conf. NAACP*, 86 F.4th at 1218. But including a reference to that section in the Complaint does not save Plaintiffs' case because Congress can still foreclose the use of § 1983 either in the statutory text or "impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing v. Freestone*, 520 U.S. 329, 341 (1997). Where the statute provides such a comprehensive enforcement scheme to demonstrate Congress's intent, "the essential predicate for implication of a private remedy simply does not exist." *Thompson v. Thompson*, 484 U.S. 174, 179 (1988) (quoting *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 94 (1981)).

The VRA contains just such a comprehensive enforcement process through the Attorney General. *See* Section I *above*; 52 U.S.C. §§ 10302, 10308, 10310. As a result, by not expressly creating a private right of action under § 2 and including other express creations of enforceability vested exclusively in the Attorney General, it is clear that "Congress did not intend" for the VRA to be enforced through § 1983. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005); *Sandoval*, 532 U.S. at 290 ("[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."). Thus, because the VRA "provide[s an] extensive,

12

comprehensive remedial framework[] that address[es] every aspect of [Plaintiffs'] claims," *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1531 (11th Cir. 1997), Plaintiffs' § 2 claim is not enforceable through § 1983.

## II.    This Court also cannot hear Plaintiffs' claims because they never allege where they live in the county.

Unlike racial gerrymandering claims, which challenge specific district boundaries, *see United States v. Hays*, 515 U.S. 737, 745 (1995), § 2 vote-dilution claims challenge the lack of majority-minority districts in the "*area as a whole.*" *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 504 (2006) (Roberts, C.J., concurring in part and dissenting in part) (emphasis added). While Plaintiffs allege they live in Houston County, [Doc. 14 at ¶¶ 5–6], they never allege they live in an area of the County where a majority-Black district could be drawn or that such a district could be drawn in their portion of the County. As a result, they have not shown they have an interest that could be addressed by this lawsuit and thus cannot invoke the jurisdiction of this Court.[5]

---

[5] While Plaintiffs do not have "the right to be placed in a majority-[Black] district once a violation of the statute is shown," *Shaw v. Hunt*, 517 U.S. 899, 917 n.9 (1996), they still must allege that they have at least the potential to be placed in such a district.

## CONCLUSION

The Attorney General abandoned the claim that the at-large method of voting in Houston County violates the VRA. Plaintiffs cannot revive that quest in the Attorney General's stead because private parties have no ability to bring claims under § 2 of the VRA or through 42 U.S.C. § 1983. Even if they did, they have not alleged sufficient facts to invoke this Court's jurisdiction. This Court should dismiss all claims against Defendants.

Respectfully submitted this 5th day of May, 2025.

*/s/Bryan P. Tyson*
Bryan P. Tyson
Georgia Bar No. 515411
btyson@clarkhill.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@clarkhill.com
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@clarkhill.com
**Clark Hill PLC**
3630 Peachtree Road NE
Suite 550
Atlanta, Georgia 30326
678.370.4377 (phone)

*Counsel for Defendants*