**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| COURTNEY DRIVER, *et al.,* | |
| *Plaintiffs*, | |
| v. | Civil Action No. 5:25-cv-0025-MTT |
| HOUSTON COUNTY BOARD OF ELECTIONS, *et al.,* | |
| *Defendants*. | |

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

**Page**

I.    Introduction ...................................................................................................................... 1

II.   Background ...................................................................................................................... 1

III.  Argument ......................................................................................................................... 2

    A.    Legal Standard ...................................................................................................... 2

    B.    Plaintiffs have an implied right of action under Section 2 ..................................... 2

        1.    Defendants ignore controlling precedent. ...................................................... 2

        2.    The controlling precedent is correct. ............................................................ 6

            a)    The VRA's text and history demonstrate an intent to create a private right of action to enforce Section 2. ............................ 6

                (1)    Section 2 confers rights on a class of persons. ............................. 7

                (2)    The VRA creates a private remedy. ............................................... 9

                (3)    Legislative history confirms Congress's intent to create a private right of action. .................................................. 10

        3.    Defendants' contrary arguments fail. ............................................................ 13

    C.    Plaintiffs are entitled to sue under Section 1983. ................................................. 15

    D.    Plaintiffs have sufficiently pleaded their vote dilution claims. ............................. 20

IV.   Conclusion ...................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama State Conf. of NAACP v. Alabama*,
   949 F.3d 647, 649, 652 (11th Cir. 2020) ........................................................ *passim*

*Alexander v. Sandoval*,
   532 U.S. 275 (2001).......................................................................................... *passim*

*Allen v. State Bd. of Elections*,
   393 U.S. 544 (1969).......................................................................................... *passim*

*Aquino v. Hazleton Area Sch. Dist.*,
   No. 3:24-CV-00206, 2024 WL 4592346 (M.D. Pa. Oct. 28, 2024) ........................16

*Arkansas State Conf. NAACP v. Arkansas Bd. of Apportionment*,
   86 F.4th 1204 (8th Cir. 2023) ...................................................................13, 14, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................2

*Blessing v. Freestone*,
   520 U.S. 329 (1997).................................................................................................19

*Brooks v. Ga State Bd. of Elections*,
   997 F.2d 857 (11th Cir. 1993) .................................................................................10

*Broward Citizens for Fair Dists. v. Broward Cnty.*,
   No. 12-60317-CIV, 2012 WL 1110053 (S.D. Fla. Apr. 3, 2012)............................20

*Cannon v. Univ. of Chicago*,
   441 U.S. 677 (1979).......................................................................................... *passim*

*Chaparro v. Carnival Corp.*,
   693 F.3d 1333 (11th Cir. 2012) .................................................................................2

*Chisom v. Roemer*,
   501 U.S. 380 (1991)...................................................................................................3

*City of Rancho Palos Verdes. v. Abrams*,
   544 U.S. 113 (2005).................................................................................................19

*Coca v. City of Dodge City*,
   669 F. Supp. 3d 1131 (D. Kan. 2023) ...............................................................16, 18

*Corley v. United States*,
  556 U.S. 303 (2009)..................................................................................14

*Dillard v. City of Greensboro*,
  213 F.3d 1347 (11th Cir. 2000) ...............................................................10

*Fla. State Conf. of NAACP v. Lee*,
  576 F. Supp. 3d 974 (N.D. Fla. 2021)........................................................5

*Ford v. Strange*,
  580 F. App'x 701 (11th Cir. 2014) .......................................................4, 13

*Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*,
  570 F.3d 1210 (11th Cir. 2009) ................................................................4

*Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees*,
  344 F.3d 1288 (11th Cir. 2003) ...............................................................20

*Georgia State Conf. of the NAACP v. Georgia*,
  No. 1:21-CV-5338, 2022 WL 18780945 (N.D. Ga. Sept. 26, 2022).....................5, 7, 8, 9, 10

*Georgia State Conf. of the NAACP v. State*,
  269 F. Supp. 3d 1266 (N.D. Ga. 2017)........................................................5

*Georgia State Conf. of the NAACP v. Georgia*,
  Nos. 21-cv-5338, 22-cv-00090, 2023 WL 7093025 (N.D. Ga. Oct. 26, 2023) ...............4, 5, 9

*Get Loud Arkansas v. Thurston*,
  748 F. Supp. 3d 630 (W.D. Ark. 2024)........................................................13

*Gonzaga Univ. v. Doe*,
  536 U.S. 273 (2002).........................................................................6, 8, 16

*Grant v. Raffensperger*,
  No. 1:22-CV-00122-SCJ, 2022 WL 1516321 (N.D. Ga. Jan. 28, 2022)...................5

*Gray v. Main*,
  291 F. Supp. 998 (M.D. Ala. 1966) .......................................................16, 17

*Greater Birmingham Ministries v. Ala.*,
  No. 2:15-cv-02193, 2017 WL 782776 (N.D. Ala. Mar. 1, 2017) ..........................5

*Gregg v. Georgia*,
  428 U.S. 153 (1976)..................................................................................3

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
  599 U.S. 166 (2023)........................................................................ *passim*

*Henderson v. McMurray,*
  987 F.3d 997 (11th Cir. 2021) ......................................................................5

*Holbrook v. City of Alpharetta,*
  112 F.3d 1522 (11th Cir. 1997) ...................................................................19

*Jackson v. Georgia Dep't of Transp.,*
  16 F.3d 1573 (11th Cir. 1994) ......................................................................4

*Johnson v. De Grandy,*
  512 U.S. 997 (1994) ......................................................................................3

*Lewis v. Governor of Ala.,*
  896 F.3d 1282 (11th Cir. 2018) ................................................................4, 13

*Livadas v. Bradshaw,*
  512 U.S. 107 (1994) .....................................................................................17

*Lopez v. Abbott,*
  No. 2:16-CV-303, 2017 WL 1209846 (S.D. Tex. Apr. 3, 2017) ...........................20

*Lopez v. Target Corp.,*
  676 F.3d 1230 (11th Cir. 2012) .....................................................................2

*Marks v. United States,*
  430 U.S. 188 (1977) ......................................................................................3

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,*
  456 U.S. 353 (1982) ............................................................................. *passim*

*Mixon v. Ohio,*
  193 F.3d 389 (6th Cir. 1999) .........................................................................5

*Morse v. Republican Party of Va.,*
  517 U.S. 186 (1996) ............................................................................. *passim*

*Newman v. Piggie Park Enters., Inc.,*
  390 U.S. 400 (1968) .....................................................................................14

*Robinson v. Ardoin,*
  86 F.4th 574 (5th Cir. 2023) ..........................................................................5

*Rose v. Raffensperger,*
  511 F. Supp. 3d 1340 (N.D. Ga. 2021) ...........................................................20

*Schwab v. Crosby,*
  451 F.3d 1308 (11th Cir. 2006) ......................................................................5

*Schwier v. Cox*,
    340 F.3d 1284 (11th Cir. 2003) ...............................................................8, 15, 18, 19

*Seminole Tribe of Fla. v. Fla.*,
    517 U.S. 44 (1996) ...............................................................................................3

*Shelby County v. Holder*,
    570 U.S. 529 (2013) .............................................................................................3

*Singleton v. Allen*,
    740 F. Supp. 3d 1138 (N.D. Ala. 2024) ................................................... *passim*

*Singleton v. Allen*,
    No. 2:21-CV-01291, 2025 WL 1342947 (N.D. Ala. May 8, 2025) ....................5, 10

*Singleton v. Merrill*,
    582 F. Supp. 3d 924 (N.D. Ala. 2022) .................................................................5

*Stone v. Allen*,
    717 F. Supp. 3d 1161 (N.D. Ala. Feb. 13, 2024) ...............................................5, 16

*Tallahassee Branch of NAACP v. Leon Cnty.*,
    827 F.2d 1436 (11th Cir. 1987) ...........................................................................4

*Thompson v. Thompson*,
    484 U.S. 174 (1988) ...........................................................................................18

*Transamerica Mortg. Advisors, Inc. v. Lewis*,
    444 U.S. 11 (1979) ...............................................................................................6

*Turtle Mountain Band of Chippewa Indians v. Howe*,
    No. 23-3655, 2025 WL 1389774 (8th Cir. May 14, 2025) ....................................19

*Turtle Mountain Band of Chippewa Indians v. Jaeger*,
    No. 3:22-cv-22, 2022 WL 2528256 (D.N.D. July 7, 2022) ...................................18

*United States v. Gibson*,
    434 F.3d 1234 (11th Cir. 2006) ...........................................................................5

*United States v. Kaley*,
    579 F.3d 1246 (11th Cir. 2009) ...........................................................................3

*United States v. Marengo Cnty. Comm'n*,
    731 F.2d 1546 (11th Cir. 1984) ...........................................................................9

*United States v. Raines*,
    362 U.S. 17 (1960) .............................................................................................15

*Veasy v. Abbott*,
  13 F.4th 362 (5th Cir. 2021) ...........................................................................10

**Statutes**

42 U.S.C. § 1971(a)(2)(B) ..................................................................................8

42 U.S.C. § 1983 ..................................................................................... *passim*

52 U.S.C. § 10101(a)(2)(B) ................................................................................8

52 U.S.C. § 10101(c) ........................................................................................18

52 U.S.C. § 10301 ..............................................................................................1

52 U.S.C. §§ 10301(a), (b)..............................................................................1, 7

52 U.S.C. § 10302 ..............................................................................................4

52 U.S.C. §§ 10302(a), (b), (c) ...............................................................9, 14, 17

52 U.S.C. § 10308 ..............................................................................................8

52 U.S.C. § 10308(a) ..........................................................................................8

52 U.S.C. § 10308(d) ........................................................................................18

52 U.S.C. § 10308(f) .........................................................................................17

52 U.S.C. § 10310(e) ............................................................................4, 9, 10, 17

**Acts**

Civil Rights Act of 1964 .....................................................................................8

Voting Rights Act (VRA) ........................................................................ *passim*

Voting Rights Act §§ 2, 3 ........................................................................ *passim*

Voting Rights Act §§ 5, 12, 14 ...........................................2, 3, 11, 12, 16, 18

**Legislative Reports**

H.R. Rep. No. 89-439 (1965) ............................................................................11

H.R. Rep. No. 91-397 (1970)............................................................................11

H.R. Rep. No. 94-196 (1975)............................................................................12

H.R. Rep. No. 97-227 (1981)............................................................................12

S. Rep. No. 94-295 (1975) ................................................................4, 11, 12

S. Rep. No. 97-417 (1982) ......................................................................12

**Federal Rules**

Federal Rule of Civil Procedure 8(a) ......................................................20

Federal Rule of Civil Procedure 12(b)(6) .................................................2

## I.     __INTRODUCTION__

Plaintiffs Courtney Driver and Michael C. Jones ( "Plaintiffs") assert claims under Section 2 of the Voting Rights Act ("VRA") and 42 U.S.C. § 1983 against the Houston County Board of Elections and its chair Pamela Morgan ("Defendants") for violating Section 2's express prohibition on any "denial or abridgement of the right of any citizen of the United States to vote on account of race or color[.]" 52 U.S.C. § 10301(a). For more than 55 years, the Supreme Court and Congress have recognized that individual voters like Plaintiffs may bring such claims and, indeed, that such claims are critical to the VRA's success. Yet Defendants, in a transparent and misguided attempt to unwind the VRA's protections across the board, now ask this Court to dismiss Plaintiffs' claims on a theory that would preclude all such private VRA enforcement efforts.

Defendants' efforts fail. Their arguments contradict Supreme Court and Eleventh Circuit precedent, disregard the statutory language, and sidestep decades of legislative history—all of which entitle Plaintiffs to bring these claims under both Section 2 and 42 U.S.C. § 1983.

## II.     __BACKGROUND__

Plaintiffs are Black residents and registered voters in Houston County, Georgia. ECF No. 14 ¶¶ 5, 6. They assert claims under Section 2 of the VRA, 52 U.S.C. § 10301, and 42 U.S.C. § 1983, because the at-large method of electing members of the Houston County, Georgia, Board of Commissioners dilutes Black voting strength in violation of Section 2. ECF No. 14 ¶¶ 1-3, 11-34. Plaintiffs seek  declaratory and injunctive relief requiring Defendants to administer future elections for members of the Houston County Board of Commissioners using a method of election that complies with Section 2. ECF No. 14 at 9.

The United States originally filed this lawsuit but later voluntarily dismissed its complaint after the Court granted Plaintiffs' motion to intervene. ECF Nos. 1, 13, 20. As a result, Plaintiffs' Complaint in Intervention against Defendants (the "Complaint") is the operative pleading. ECF

No. 14. On April 4, 2025, Plaintiffs moved to drop Houston County and the elected members of the Houston County Board of Commissioners as defendants, which motion the Court granted. ECF Nos. 22, 23. On May 5, 2025, Defendants moved to dismiss. ECF No. 29.

## III.  ARGUMENT

### A.  Legal Standard.

A complaint need not make "detailed factual allegations" but need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). On a motion to dismiss under Rule 12(b)(6), the Court "must accept all allegations in the complaint as true and construe the facts in the light most favorable to the plaintiff." *Lopez v. Target Corp.*, 676 F.3d 1230, 1232 (11th Cir. 2012). Where the factual allegations provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of the defendant's liability," the court must deny the motion to dismiss. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

### B.  Plaintiffs have an implied right of action under Section 2.

Defendants' motion fails because its thesis—that "there is no private right of action to enforce § 2" of the VRA, ECF No. 29-1 at 4—is contrary to decades of binding precedent. Defendants also disregard statutory language and legislative history establishing that private actions are not only allowed but critical to the statute's enforcement.

#### 1.  Defendants ignore controlling precedent.

Supreme Court and Eleventh Circuit precedent—all but ignored by Defendants—establishes that there is a private right of action under Section 2.

In *Morse v. Republican Party of Va.*, 517 U.S. 186 (1996), the Supreme Court concluded based on its review of the statutory text and legislative history that the Court's holding in *Allen v. State Board of Elections*, 393 U.S. 544 (1969)—"private parties may enforce § 5 of the Voting

2

Rights Act," *Morse*, 517 U.S. at 231—meant that Section 2 was "***enforceable by private action***" as well. *Id.* at 231–32 (emphasis added); *id.* at 240 (Breyer, J., concurring) ("the rationale of [*Allen*] (Congress established private right of action to enforce § 5), applies with similar force not only to § 2 but also to § 10.").[1] *Morse*'s determination that Section 2 was enforceable by private action was critical to its holding that VRA Section 10 likewise implies a private right of action.[2] The Court's view as to Section 2—underscored by the fact that it subsequently "entertained cases brought by private litigants to enforce § 2," *id.* at 232 (citing *Chisom v. Roemer*, 501 U.S. 380 (1991) and *Johnson v. De Grandy*, 512 U.S. 997 (1994))—is thus a "necessary" and binding portion of the *Morse* holding. *Seminole Tribe of Fla. v. Fla.,* 517 U.S. 44, 66–67 (1996); *United States v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009).[3]

The *Morse* analysis rested not only on *Allen* and the original VRA text but also on the 1975 amendments that "recognize the existence of a private right of action." *Morse*, 517 U.S. at 233–34; *see also id.* at 230 (Breyer, J., concurring). The plurality opinion explained: "Section 3, for example, [which] originally provided for special procedures in any action . . . by the Attorney

---

[1] In multi-opinion majority cases, the holding of the case is "'that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *See Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)). Because five Justices agreed that Section 10, like Sections 2 and 5, includes an implied right of action, that constitutes the holding. *See Morse*, 517 U.S. at 232 (Stevens, J.); *see also id.* at 240 (Breyer, J., concurring).

[2] *See Morse*, 517 U.S. at 232 ("It would be anomalous, to say the least, to hold that both § 2 and § 5 are enforceable by private action but § 10 is not, when all lack the same express authorizing language"); *id.* at 240 (Breyer, J., concurring) ("Congress intended to establish a private right of action to enforce § 10, no less than it did to enforce §§ 2 and 5").

[3] The Supreme Court reiterated the importance of private Section 2 actions in *Shelby County v. Holder*, 570 U.S. 529, 557 (2013), noting that the Court's decision as to VRA § 5 "in no way affects the permanent, nationwide ban on racial discrimination in voting found in § 2." Describing significance of that ban, the Court emphasized that "***[b]oth the Federal Government and individuals have sued to enforce § 2.***" *Id.* at 537 (citing *Johnson,* 512 U.S. 997 ) (emphasis added). *De Grandy* was also clear on this point: "***the Government's [§ 2] claims, like those of the private plaintiffs, are properly before the federal courts***." *Id.* at 1006 (emphasis added).

General," was amended "to cover actions brought by 'the Attorney General *or an aggrieved person.*'" *Morse*, 517 U.S. at 233 (quoting 52 U.S.C. § 10302) (emphasis in original). This change was made to "***provide the same remedies to private parties as had formerly been available to the Attorney General alone***." *Id.* at 234 (citing S. Rep. No. 94-295, at 39-40 (1975)) (emphasis added). Similarly, Section 14(e), also added in 1975, "allows attorney fees to be granted to 'the prevailing party, ***other than the United States***,'" further clarifying that Congress contemplated VRA suits by "private litigant[s]." *Morse,* 517 U.S. at 234 (citing 52 U.S.C. § 10310(e)) (emphasis in original); *see also id.* at 240 (Breyer, J., concurring) (citing same legislative history of 1975 amendments).

The Eleventh Circuit has repeatedly adhered to and reinforced *Morse*'s determination as to Section 2, holding that "***Congress 'clearly intended' § 2 to be enforceable by private action***." *Lewis v. Governor of Ala.*, 896 F.3d 1282, 1293 (11th Cir. 2018) (citing *Morse*, 517 U.S. at 121) (emphasis added), *vacated on other grounds on reh'g en banc*, 944 F.3d 1287 (11th Cir. 2019). Similarly, in *Ford v. Strange*, 580 F. App'x 701, 705 n.6 (11th Cir. 2014), the court recognized: "A majority of the Supreme Court has indicated that section 2 of the Voting Rights Act contains an implied private right of action." More recently, in *Alabama State Conference of NAACP v. Alabama* ("*Alabama NAACP*"),[4] the court also adopted *Morse's* analysis of the 1975 VRA amendments, concluding: "***The language of § 2 and § 3, read together, ... explicitly provides***

---

[4] *Alabama NAACP* "is not controlling because the judgment was ultimately vacated as moot," but "the majority's analysis remains persuasive." *Georgia State Conf. of the NAACP v. Georgia* ("*Georgia NAACP*"), Nos. 21-cv-5338, 22-cv-00090, 2023 WL 7093025, at *7 (N.D. Ga. Oct. 26, 2023) (three-judge court) (citing *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009) and *Tallahassee Branch of NAACP v. Leon Cnty.*, 827 F.2d 1436, 1440 (11th Cir. 1987)); *see also Jackson v. Georgia Dep't of Transp.,* 16 F.3d 1573, 1578 n.7 (11th Cir. 1994).

*remedies to private parties to address violations under the statute*." 949 F.3d 647, 649, 652 (11th Cir. 2020) (emphasis added), *cert. granted, j. vacated on other grounds*, 141 S. Ct. 2618 (2021).[5]

Consistent with Supreme Court and Eleventh Circuit precedent, district courts in the Eleventh Circuit that have addressed the issue—including multiple three-judge panels—have held without exception that there is a private right of action under Section 2. *Georgia NAACP*, 2023 WL 7093025, at *7-8; *Georgia NAACP* v. *Georgia*, No. 1:21-CV-5338, 2022 WL 18780945, at *4 (N.D. Ga. Sept. 26, 2022) (three-judge court); *Georgia NAACP v. State*, 269 F. Supp. 3d 1266, 1275 (N.D. Ga. 2017) (three-judge court); *Singleton v. Allen*, No. 2:21-CV-01291, 2025 WL 1342947, at *173–74 (N.D. Ala. May 8, 2025) (three-judge court); *Singleton v. Merrill*, 582 F. Supp. 3d 924, 1031 (N.D. Ala. 2022) (three-judge court), *aff'd*, *Allen v. Milligan,* 599 U.S. 1, 10 (2023); *Grant v. Raffensperger*, No. 1:22-CV-00122, 2022 WL 1516321, at *9–10 (N.D. Ga. Jan. 28, 2022); *Stone v. Allen,* 717 F. Supp. 3d 1161, 1172 (N.D. Ala. Feb. 13, 2024) (citing "decades of controlling Section Two jurisprudence," from "both the Supreme Court and the Eleventh Circuit"); *Greater Birmingham Ministries v. Ala.*, No. 2:15-cv-02193, 2017 WL 782776, at *12 (N.D. Ala. Mar. 1, 2017); *Fla. State Conf. of NAACP v. Lee*, 576 F. Supp. 3d 974, 988–991 (N.D. Fla. 2021).

This clear precedent binds this Court. *United States v. Gibson*, 434 F.3d 1234, 1246 (11th Cir. 2006) ("It is not given to us to overrule the decisions of the Supreme Court."). Indeed, even under Defendants' theory that the plurality's discussions of Section 2 in *Morse* are dicta, lower courts are "obligated to respect" those statements. *Henderson v. McMurray*, 987 F.3d 997, 1006 (11th Cir. 2021) (Pryor, C.J.); *see also Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) ("there is dicta . . . and then there is Supreme Court dicta."). Defendants' motion should be denied for that reason alone.

---

[5] The Fifth and Sixth Circuits have reached the same conclusion. *Robinson v. Ardoin*, 86 F.4th 574, 588 (5th Cir. 2023); *Mixon v. Ohio*, 193 F.3d 389, 406 (6th Cir. 1999).

2.    **The controlling precedent is correct.**

Even if there were no controlling precedent on the issue, the VRA's text and history would lead to the same conclusion: Plaintiffs have a private right of action under Section 2.

a)    **The VRA's text and history demonstrate an intent to create a private right of action to enforce Section 2.**

When the plaintiff asserts a statutory private right of action, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979)). Determining congressional intent "begins with the text and structure of the statute." *Id.* at 288 n.7. The intent to create a private right is satisfied where "the language of the statute explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff in the case." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 702–03 n.13 (1979) (collecting cases); *Sandoval*, 532 at 288 (citing *Cannon*); *see also Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023) (statute confers a private right "where the provision in question is 'phrased in terms of the persons benefitted and contains rights-creating, individual-centric language with an unmistakable focus on the benefited class'" (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002)) (cleaned up).

Whether Congress intended to create a private remedy turns not just on the statutory language but on the statutory context. "When Congress acts in a statutory context in which an implied private remedy has already been recognized by the courts, . . . Congress need not have intended to create a new remedy, since one already existed; the question is whether Congress intended to preserve the pre-existing remedy." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 378–79 (1982); *see also Cannon*, 441 U.S. at 698–99 (addressing relevance of "contemporary legal context" in these circumstances); *Sandoval*, 532 U.S. at 287–88 (same)

(citing *Merrill Lynch* and *Cannon*). Courts may conduct "[a] review of the legislative history of the statute" to decide whether "preservation of the remedy was indeed what Congress actually intended." *Merrill Lynch*, 456 U.S. at 382. And the VRA's statutory context compels the conclusion that Congress intended for Section 2 be privately enforceable.

### (1)    Section 2 confers rights on a class of persons.

As to the first requirement for a private right of action, Section 2 "explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff in the case." *Cannon*, 441 U.S. at 702–03 n.13. It provides: "(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of ***the right of any citizen of the United States to vote on account of race or color***"; and further provides that this prohibition is violated where "the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by ***members of a class of citizens protected by subsection (a)***." 52 U.S.C. § 10301 (a), (b) (emphasis added).

Courts have had no difficulty concluding that such language satisfies a "rights-creating" requirement for finding a private right of action. The *Singleton* three-judge panel noted: "[E]very sentence of Section Two either refers to rights of the benefited class, contains rights-creating language that creates new rights for that specific class, or expressly focuses on the benefited class." *Singleton v. Allen*, 740 F. Supp. 3d 1138, 1158 (N.D. Ala. 2024). Punctuating its analysis, the court said: "***If all of this is not rights-creating language with an 'unmistakable focus on the benefited class,' it is difficult to imagine what is***." *Id.* at 1159 (quoting *Cannon,* 441 U.S. at 691) (emphasis added). The three-judge panel in *Georgia NAACP* similarly observed: "This provision identifies a specific 'right in explicit terms. And it expressly defines the 'particular class of persons' that holds

the right. ***If that is not rights-creating language, we are not sure what is.***" 2022 WL 18780945, at *4 (quoting *Sandoval*, 532 U.S. at 289) (emphasis added).

As further explained in *Morse*, VRA Section 12 reinforces the conclusion that Section 2 and other substantive VRA provisions were intended to have a "rights-creating" effect. 517 U.S. at 233 & n.44 (quoting 52 U.S.C. § 10308). Section 12 prohibits any act "***to deprive any person of any right secured by***" specified VRA Sections, including Sections 2, 5, and 10, thus establishing legislative intent that the rights described in Section 2 are "secured by" that provision. 52 U.S.C. § 10308(a) (emphasis added). Thus, based on the language of Section 2 and Section 12, Section 2 "explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff in the case." *Cannon*, 441 U.S. at 702–03 n.13.

Eleventh Circuit precedent compels the same conclusion. In *Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003), the court held that another voting rights statute, the "Materiality Provision" of the Civil Rights Act of 1964, 52 U.S.C. 10101(a)(2)(B) (then codified at 42 U.S.C. § 1971(a)(2)(B)), "contains 'explicit right- or duty-creating language.'" 340 F.3d at 1296 (quoting *Gonzaga*, 536 U.S. at 284 n.3). Analogous to Section 2, the provision states in pertinent part: "No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an [immaterial] error or omission on any record or paper relating to any application, registration, or other act requisite to voting . . . ." *Id.* (citation omitted). The *Schwier* court concluded: "This language is clearly analogous to the right-creating language cited by … *Gonzaga*[.] The subject of the sentence is the person acting under color of state law, but ***the focus of the text is nonetheless the protection of each individual's right to vote***." *Id.* (citation omitted) (emphasis added). There is no basis for reaching a different conclusion as to Section 2.

**(2)      The VRA creates a private remedy.**

The statutory text is likewise clear that Congress intended to create a private remedy for Section 2 violations. This issue requires the Court to "consider whether the statutory structure of the VRA contains language that implies a private remedy to enforce Section 2." *Georgia NAACP*, 2022 WL 18780945, at *5. The starting place for that analysis is the language of Section 2 itself, described above. Indeed, the "right- or duty-creating language of [a] statute has generally been the most accurate indicator of the propriety of implication of a *cause* of action." *Cannon*, 441 U.S. at 690 n.13 (emphasis added); *see also Sandoval*, 532 U.S. at 288 (characterizing this component of the analysis as "critical"). Yet, as caselaw shows, the remedial provisions of Sections 3 and 14 also demonstrate that Congress created a private remedy for Section 2.

Section 3 of the VRA sets forth special remedies which are available "***[w]henever the Attorney General or an aggrieved person institutes a proceeding*** " or "***in a proceeding instituted by the Attorney General or an aggrieved person*** . . . under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. §§ 10302(a), (b) (emphasis added). The VRA, including Section 2, was enacted "to enforce the voting guarantees of the fourteenth or fifteenth amendment" within the meaning of Section 3. *United States v. Marengo Cnty. Comm'n*, 731 F.2d 1546, 1550 (11th Cir. 1984) ("[A]mended section 2 is a constitutional exercise of congressional enforcement power under the Fourteenth and Fifteenth Amendments."); *Singleton*, 740 F. Supp. 3d at 1159–1160 ("Section Two is unambiguously an action or proceeding to 'enforce the voting guarantees of the . . . fifteenth amendment.'") (quoting 52 U.S.C. § 10310(e)). As a result, Sections 2 and 3 "make[ ] it 'both unequivocal and textual' that ***Congress intended to … permit aggrieved persons to institute proceedings against any State that violates § 2 of the VRA***." *Alabama NAACP*, 949 F.3d at 652 n.4 (emphasis added); *see also Georgia NAACP*, 2023 WL 7093025, at *8.

Section 14 of the VRA "reinforces the idea that Congress contemplated suits by private parties when it enacted Section Two." *Singleton*, 2025 WL 1342947, at *174. Section 14(e) provides: "In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs." 52 U.S.C. § 10310(e). This provision necessarily refers to "a private litigant," "not the United States, and the Attorney General does not collect attorney's fees." *Morse*, 517 U.S. at 234. Section 14 thus "anticipates that private litigants will sue . . . alongside the United States." *Singleton*, 2025 WL 1342947, at *174.[6] *Cannon* recognized a private right of action in another statute based on similar fee-shifting language, noting it "***explicitly presumes the availability of private suits***." *Cannon*, 441 U.S. at 699–700 (emphasis added).

In sum, "[b]ecause a Section 2 action enforces the voting guarantees of the Fourteenth and Fifteenth Amendments, a Section 2 action is among the proceedings that Congress has implied, in Sections 3 and 14 of the VRA, that private parties may assert. *Georgia NAACP*, 2022 WL 18780945, at *5–6; *see also Morse*, 517 U.S. at 234 ("Both [§ 14] and § 3 . . . recognize the existence of a private right of action under § 10").

### (3) Legislative history confirms Congress's intent to create a private right of action.

The VRA's legislative history confirms that Section 2 was intended to create private rights and remedies and that Congress repeatedly ratified the entire federal judiciary's long-standing holdings to that effect.

---

[6] Accordingly, courts regularly award attorney's fees to private litigants under Section 14(e) for that very purpose. *Brooks v. Ga State Bd. of Elections*, 997 F.2d 857, 860–61 (11th Cir. 1993); *Veasy v. Abbott*, 13 F.4th 362, 368 (5th Cir. 2021) (awarding attorney's fees to private plaintiffs in a Section 2 case); *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000) (same).

First, Congress made clear that Section 2 was intended to have a "rights-creating" effect, as *Sandoval* and *Cannon* require. The 1965 House committee report explained, consistent with Section 2's text: "***This section grants to all citizens of the United States a right to be free from enactment or enforcement of voting qualifications or pre-requisites to voting or procedures, standards, or practices which deny or abridge the right to vote on account of race or color***." H.R. Rep. No. 89-439 pt. 2 at 2454 (1965) (emphasis added).

Second, the VRA's subsequent legislative history reflects the "statutory context" contemplated by the Supreme Court's *Merrill Lynch* and *Cannon* decisions, in which Congress acts after "an implied private remedy has already been recognized by the courts," and "the question is whether Congress intended to preserve the pre-existing remedy." *Merrill Lynch*, 456 U.S. at 378–79. Here, as in those cases, the legislative history shows that "preservation of the remedy was indeed what Congress actually intended." *Id.* at 382.

In amending the VRA in 1970, 1975, and 1982, Congress emphatically embraced the Supreme Court's 1969 ruling in *Allen* that the VRA created a private right of action for Section 5 and then expanded remedies for private litigants as well as the scope of Section 2. The 1970 House Report expressly endorsed *Allen*'s holding, quoting the Court's statement: "'***The achievement of the Act's laudable goal could be severely hampered, however, if each citizen were required to depend solely on litigation instituted at the discretion of the Attorney General***.'" H.R. Rep. No. 91-397, at 3284 (1970) (quoting *Allen*, 393 U.S. at 556) (emphasis added).

Then, in 1975, Congress amended the VRA to expand Section 3 remedies to "aggrieved person[s]" and to add in Section 14 a right to attorney's fees—provisions the *Morse* majority cited as evidence of Congressional intent to allow private actions. 517 U.S. at 233–34; *see id.* at 240 (Breyer, J., concurring) (citing S. Rep. No. 94-295, at 40-41 (1975)). In explaining the purpose of

11

these amendments, Congress again stressed private litigation. In one passage cited in *Morse*, the 1975 Senate Report explained that Section 401 of the bill "'***amends Section 3 of the Voting Rights Act to afford to private parties the same remedies which Section 3 now affords only to the Attorney General***.'" *Morse*, 517 U.S. at 233 (citing S. Rep. No. 94-295, at 39–40 (1975)) (emphasis added). *Morse* noted that the same report also stated that the attorney's fees provision, added by Section 402 of the bill, "'***is appropriate in voting rights cases because . . . Congress depends heavily upon private citizens to enforce the fundamental rights involved***,'" and "'***[f]ee awards are a necessary means of enabling private citizens to vindicate these Federal rights***.'" *Morse*, 517 U.S. at 234 n.46 (citing S. Rep. No. 94-295 at 40-41 (1975)) (emphasis added); *id.* at 240 (Breyer, J., concurring) (citing same; also citing H.R. Rep. No. 94–196, at 33–34 (1975)).

In 1982, Congress once again invoked *Allen* and emphasized the role of private Section 2 litigation in enacting VRA amendments that, which among other things expanded Section 2 to encompass discriminatory effects: ***"[T]he Committee reiterates the existence of the private right of action under Section 2, as has been clearly intended by Congress since 1965***. *See Allen v. Board of Elections*, 393 U.S. 544 1969." S. Rep. No. 97-417, pt. 1 at 30 (1982) (emphasis added); *see also* H.R. Rep. No. 97-227, at 32 (1981) ("It is intended that citizens have a private cause of action to enforce their rights under Section 2. . . . If they prevail they are entitled to attorneys' fees . . ."). Reviewing this history, the *Morse* Court observed that "Congress has not only ratified *Allen*'s construction of § 5 in subsequent reenactments, but extended its logic to other provisions of the Act." *Morse*, 517 U.S. at 232 (citation omitted); *id.* at 240 (Breyer, J., concurring) (adopting Justice Stevens's analysis and also citing S. Rep. No. 97-417, pt. 1 at 30 (1982)).

In sum, the VRA's legislative history and statutory context establish that Congress intended Section 2 to create a private right at the outset, embraced the Supreme Court's recognition of that

right and strove to preserve and expand the VRA's private remedies. The analytical frameworks established by *Merrill Lynch, Cannon,* and *Sandoval* reinforce the conclusion that Congress intended Section 2 to be privately enforceable.

### 3.    Defendants' contrary arguments fail.

Rather than substantively engaging the controlling caselaw, plain statutory text, and unambiguous legislative history, Defendants urge the Court to adopt the flawed reasoning of a single outlier decision, *Arkansas State Conf. NAACP v. Arkansas Bd. of Apportionment* ("*Arkansas NAACP*"), 86 F.4th 1204 (8th Cir. 2023). Defendants' attempt to upend 60 years of clear congressional intent and controlling precedent fails.

First, Defendants' radical position hinges on the flawed theory that the plurality view in *Morse* is not binding, and that instead the four-justice *Morse* dissent should carry the day. ECF No. 29-1 at 6–7; *Arkansas NAACP*, 86 F.4th at 1215–16. As discussed above in Section II(B)(1), this theory is baseless and contrary to Eleventh Circuit precedent. *Lewis*, 896 F.3d at 1293; *Ford*, 580 F. App'x at 705 n.6; *Alabama NAACP*, 949 F.3d at 649, 652.

Second, Defendants ignore the Eighth Circuit's obvious failure to answer the "critical" first question under *Sandoval*, whether Section 2 creates a private right in the first place. *Arkansas NAACP*, 86 F.4th at 1209–10.[7] Skipping that first step undermines their entire analysis, because

---

[7] The Eighth Circuit found the question unanswerable because Section 2 references both "what states and political subdivisions cannot do" and "the right of any citizen" to be free from discrimination in voting. *Arkansas NAACP*, 86 F.4th at 1210. But as other courts have noted in rejecting the Eighth Circuit's analysis, such dual references impose no impediment at all to finding a private right, as the Supreme Court held most recently in *Talevski. Singleton*, 740 F. Supp. 3d at 1160–61 (citing *Talevski,* 599 U.S. at 185); *Get Loud Arkansas v. Thurston*, 748 F. Supp. 3d 630, 649 (W.D. Ark. 2024) (same); *Talevski*, 599 U.S. at 185 ("[I]t would be strange to hold that a statutory provision fails to secure rights simply because it considers, alongside the rights bearers, the actors that might threaten those rights . . . .").

such a right is "the most accurate indicator of the propriety of implication of a *cause* of action." *Cannon*, 441 U.S. at 690 n.13 (emphasis added); *see also Sandoval*, 532 U.S. at 288.

Third, Defendants and the Eighth Circuit have no plausible answer to the *Morse* plurality's and the Eleventh Circuit's conclusion that Congress' 1975 expansion of Section 3 remedies to "aggrieved persons" and addition of private litigant fee awards in Section 14 show an intent to embrace the private remedy that exists in other sections. *Morse*, 517 U.S. at 233, 234; *Alabama NAACP*, 949 F.3d at 649, 652. Defendants argue, based on the *Morse* dissent, that Section 3 applies not to Section 2 but only to unspecified other existing or future statutes that create a private right of action. ECF No. 29-1 at 6–7 (citing *Morse*, 517 U.S. at 289 (Thomas, J., dissenting)). This argument ignores the plain language of Section 3, which as discussed above, unambiguously encompasses Section 2 as a "statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. §§ 10302(a), (b). And since Defendants cannot identify any other statute to which Section 3 applies, their argument would render the addition of "aggrieved persons" superfluous, contradicting "one of the most basic interpretive canons[,] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quotation marks, alterations, and citation omitted). As for Section 14(e), Defendants remain silent, while the Eighth Circuit offers only in passing the theory that it allows attorney's fees only for private *defendants*, *Arkansas NAACP*, 86 F.4th at 1213 n.4, contradicting not only the VRA legislative history but also well-established precedent. *Singleton*, 740 F. Supp. 3d at 1160 (citing *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401 n.1, 402 (1968) (per curiam)).

Fifth, contrary to Defendants' and the Eighth Circuit's theory, the VRA's creation of an express right of action by the Attorney General in Section 12 does not undercut recognition of an

14

implied private right of action. *See Alabama NAACP*, 949 F.3d at 651. The Supreme Court explained in *Allen*: "[T]he specific references to the Attorney General were included to give the Attorney General power to bring suit **to enforce what might otherwise be viewed as 'private' rights**." 393 U.S. at 554–55 n.18 (citing *United States v. Raines*, 362 U.S. 17, 27 (1960)) (emphasis added). Further, "there is certainly no specific exclusion of private actions" in Section 12. *Id.* On the contrary, Section 12(f), which addresses federal court jurisdiction for "**a person asserting rights under the provisions of this Act**," might itself "**be viewed as authorizing private actions**." *Id.* (emphasis added). In any event, the Eleventh Circuit, citing both *Allen* and *Morse,* rejected Defendants' contrary theory in finding a private right of action under the Materiality Clause. *Schwier*, 340 F.3d at 1295–96 ("[N]either § 1971's provision for enforcement by the Attorney General nor Congress's failure to provide for a private right of action expressly in § 1971 *require* the conclusion that Congress did not intend such a right to exist.") (emphasis in original).

Sixth, Defendants and the Eighth Circuit purport to be baffled by Congress's decision not to grant an express private right of action under Section 2. *See* ECF No. 29-1 at 11; *Arkansas NAACP*, 86 F.4th at 1214. But this ignores the well-established framework for evaluating implied rights of action where, as here, Congress reenacted the statute after courts found an implied right of action. *Merrill Lynch*, 456 U.S. at 378–79. Under that framework, as discussed above, the VRA amendments unquestionably preserved and strengthened the implied right of action that the Supreme Court found 60 years ago.

### C.    Plaintiffs are entitled to sue under Section 1983.

Defendants' motion to dismiss Plaintiffs' Section 1983 claim—on the theory that the VRA creates a "comprehensive enforcement process through the Attorney General," ECF No. 29-1 at 12—also fails. "Plaintiffs suing under § 1983 do not have the burden of showing an intent to create

a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes." *Gonzaga Univ.*, 536 U.S. at 284–85. Rather, the plaintiff need only satisfy the first element of an implied private action claim described above—*i.e.,* that the statute "'unambiguously confer[s]' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs.'" *Talevski*, 599 U.S. at 183–84 (quoting *Gonzaga Univ.,* 536 U.S. at 283, 285–286). "Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Gonzaga Univ.*, 536 U.S. at 284–85.

That presumption applies here. As with their argument against finding an implied VRA right of action, Defendants' three-paragraph Section 1983 argument does not contest that VRA Section 2 contains the requisite "rights-creating" language. ECF No. 29-1 at 11-13. Nor could they. For all the reasons discussed above, it unquestionably does. Accordingly, many courts—going back almost 60 years in this Circuit—have allowed Section 1983 claims based on Section 2 violations. *See, e.g., Singleton,* 740 F. Supp. 3d at 1169; *Stone,* 717 F. Supp. 3d at 1173; *Gray v. Main*, 291 F. Supp. 998, 999–1000 (M.D. Ala. 1966); *Aquino v. Hazleton Area Sch. Dist*., No. 3:24-CV-00206, 2024 WL 4592346, at *6, n.7 (M.D. Pa. Oct. 28, 2024); *Coca v. City of Dodge City*, 669 F. Supp. 3d 1131, 1141–42 (D. Kan. 2023). Thus, Defendants have the burden of overcoming the presumption that Section 1983 provides a remedy here.

To do so, Defendants must "demonstrat[e] that Congress did not intend' that § 1983 be available to enforce those rights," either because the statute "expressly forbid[s] § 1983's use" or because Congress forbid its use "implicitly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Talevski*, 599 U.S. at 186 (citations and quotation marks omitted). The VRA does not expressly forbid Section 1983's use, so Defendants resort to arguing, based on cursory references to VRA Sections 3, 12 and 14, that "[t]he

VRA contains . . . a comprehensive enforcement process through the Attorney General." ECF No. 29-1 at 12. That argument fails for three reasons.

First, a "comprehensive remedial scheme" does not foreclose a Section 1983 remedy unless that scheme shows it is "incompatible" with Section 1983 enforcement—"*i.e.,* it demonstrates that '***Congress intended [that] statute's remedial scheme to be the exclusive avenue through which a plaintiff may assert [his] claims***.'" *Talevski*, 599 U.S. at 188–89 (citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 252 (2009) (emphasis added). Such incompatibility has been found to exist only in "exceptional cases," *Livadas v. Bradshaw*, 512 U.S. 107, 132–33 (1994), where the "statute required plaintiffs to 'comply with particular procedures and/or to exhaust particular administrative remedies' under the statute's enforcement scheme before suing under its dedicated right of action." *Talevski*, 599 U.S. at 189–190 (citing *Fitzgerald*, 555 U.S. at 254). Defendants can of course point to no such scheme anywhere in the VRA.

Second, the VRA's text, history and judicial interpretation for decades shows its remedial scheme is entirely compatible with, and indeed, dependent on, private enforcement. The very provisions Defendants cite bear this out. Section 3 expressly contemplates "proceeding[s]" by "the Attorney General or an aggrieved person," 52 U.S.C. §§ 10302(a), (b), (c); Section 12 eliminates any requirement for "a person asserting rights under" the VRA and other voting statutes to "exhaust[ ] any administrative or other remedies that may be provided by law," 52 U.S.C. § 10308(f); and Section 14 provides for attorney's fee awards to private litigants, 52 U.S.C. § 10310(e). In any event, the legislative history described above and the Eleventh Circuit's recognition that the VRA's "success is largely due to the work of private litigants," *Alabama NAACP* at 649, defeats Defendants' baseless claim that Attorney General and private enforcement are incompatible. *Alabama NAACP,* 949 F.3d at 649. *See also Gray*, 291 F. Supp. at 1000

(rejecting similar argument regarding Attorney General's "specific authority" under VRA Section 12(d) as "not persuasive"); *Coca*, 669 F. Supp. 3d at 1141 ("Section 12, which authorizes the Attorney General to seek injunctions, fines, and imprisonment for violation of the VRA, [is] not incompatible with individual enforcement.") (citing as "highly persuasive" *Turtle Mountain Band of Chippewa Indians v. Jaeger*, No. 3:22-cv-22, 2022 WL 2528256, at *6 (D.N.D. July 7, 2022)).

Third, Defendants' argument is foreclosed by the Eleventh Circuit's holding in *Schwier* that Section 1983 provides a remedy for Materiality Provision violations. The statute contained an Attorney General enforcement provision [8] virtually identical to the VRA Section 12 language cited by Defendants.[9] Yet *Schwier* rejected the argument and the District Court's holding that such language foreclosed a Section 1983 remedy, stating that nothing in the provision compelled "the conclusion that Congress did not intend [a private right of action] to exist." 340 F.3d at 1296. Defendants, improperly ignoring *Schwier*, offer no justification for reaching a different result here.

Indeed, the cases Defendants cite on this issue confirm that the VRA does not create a "comprehensive enforcement scheme" incompatible with private rights of action. [10] ECF No. 29-1 at 12. In two of them, the statute, unlike the VRA, provided an express private right of action with procedural and substantive requirements, thus giving rise to "incompatib[ility]" with Section

---

[8] "Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice which would deprive any other person of any right or privilege secured by subsection (a) or (b), the Attorney General may institute for the United States, or in the name of the United States, a civil action or other proper proceeding for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order." 52 U.S.C. § 10101(c).

[9] "Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by [specified VRA sections], the Attorney General may institute for the United States, or in the name of the United States, an action for preventive relief, including an application for a temporary or permanent injunction, restraining order, or other order . . . ." 52 U.S.C. § 10308(d).

[10] Contrary to Defendants' misleading quotation, *Thompson v. Thompson*, 484 U.S. 174, 179 (1988), does not address or even mention the issue.

1983 under the *Talevski* standard. *See City of Rancho Palos Verdes. v. Abrams*, 544 U.S. 113, 116, 122–25 (2005) (statutes grants express private right of action for "[a]ny person adversely affected" which "limits relief in ways that § 1983 does not."); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997) (statutes "provide extensive, comprehensive remedial frameworks that address every aspect of [plaintiff's] claims under section 1983"). And a third case Defendants cite flatly contradicts their theory, holding that, where the statute in question "contains no private remedy—either judicial or administrative—through which aggrieved persons can seek redress," federal "***oversight powers are not comprehensive enough to close the door on § 1983 liability***." *Blessing v. Freestone*, 520 U.S. 329, 331, 348 (1997) (emphasis added).

Defendants' May 19, 2025 Notice of Supplemental Authority (ECF No. 34) regarding the *Turtle Mountain Band of Chippewa Indians v. Howe,* No. 23-3655, 2025 WL 1389774 (8th Cir. May 14, 2025), does not salvage their effort. That case does not even address the "comprehensive remedial scheme" issue—Defendants' sole argument against Plaintiffs' Section 1983 Claim. *Turtle Mountain Band*, 2025 WL 1389774, at *5 n.4 ("declin[ing] to address whether Congress specifically foreclosed a remedy under Section 1983."). In any event, that case merely doubles down on the Eighth Circuit's already-flawed view that there is no private right under VRA Section 2, which Plaintiffs have shown to be contrary to the statutory text, legislative history, and controlling precedent. Indeed, the *Turtle Mountain* dissent bears this out by quoting the three-judge decision in *Singleton*, the Eleventh Circuit opinion in *Schwier* and other cases cited above to explain why the *Turtle Mountain* majority got it dead wrong. *Turtle Mountain Band*, 2025 WL 1389774, at *8, 9 (Colloton, C.J., dissenting) (quoting *Singleton*, 740 F. Supp. 3d at 1158; *Schwier*, 340 F.3d at 1296). Defendants' Hail Mary reliance on *Turtle Mountain* only highlights that in this judicial Circuit, Plaintiffs have a clear right to proceed under Section 1983. This Court is simply

not free to follow the Eighth Circuit's lead even if it finds that court's reasoning persuasive. *See Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees*, 344 F.3d 1288, 1292 (11th Cir. 2003) (collecting cases establishing that, without a clearly contrary opinion by the Supreme Court or the Eleventh Circuit sitting *en banc*, courts in this Circuit are bound by its prior panel opinions).

### D. Plaintiffs have sufficiently pleaded their vote dilution claims.

Defendants also suggest that, to show standing, Plaintiffs must "allege they live in an area of the County where a majority-Black district could be drawn or that such a district could be drawn in their portion of the County." ECF No. 29-1 at 13. Defendants cite no authority for this bald assertion, which is contradicted by vote dilution pleading standards. "To demonstrate an injury-in-fact for purposes of a vote dilution claim, Plaintiffs must show that they (1) reside and are registered voters in districts where alleged dilution occurred, and (2) are members of a protected class whose voting strength was diluted." *Rose v. Raffensperger*, 511 F. Supp. 3d 1340, 1352 (N.D. Ga. 2021) (citing *Broward Citizens for Fair Dists. v. Broward Cnty.*, No. 12-60317-CIV, 2012 WL 1110053, at *3 (S.D. Fla. Apr. 3, 2012); *see also Lopez v. Abbott,* No. 2:16-CV-303, 2017 WL 1209846, at *2 (S.D. Tex. Apr. 3, 2017).

Here, Plaintiffs satisfy these requirements by alleging that they are Black registered voters in Houston County, and that vote dilution takes place in Houston County because of the county's at-large method of election. ECF No. 14 ¶¶ 5, 6, 34. Nothing more is required. Indeed, any requirement to include at the pleading stage allegations as to the appropriate boundaries of single-member districts would be premature, burdensome and contrary to the requirements of Federal Rule of Civil Procedure 8(a). If the Court concludes otherwise, Plaintiffs respectfully request leave to amend to cure any pleading deficiency.

## IV. CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss should be denied.

Dated: May 27, 2024                     Respectfully submitted,

                                        */s/ Bryan L. Sells*

Bryan L. Sells
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
bryan@bryansellslaw.com

Lynsey Morris Barron
Georgia Bar No. 661005
Barron Law LLC
1800 Peachtree St. NE, Suite 300
Atlanta, GA
404-276-3261
lynsey@barron.law

Arielle Anderson (*Admitted Pro Hac Vice*)
arielle.anderson@hoganlovells.com
**HOGAN LOVELLS US LLP**
609 Main St., Suite 4200
Houston, Texas 77002
Tel. (713) 632-1400
Fax (713) 632-1401

David Newmann (*Admitted Pro Hac Vice*)
david.newmann@hoganlovells.com
**HOGAN LOVELLS US LLP**
1735 Market St., 23rd Floor
Philadelphia, Pennsylvania 19103
Tel. (267) 675-4600
Fax (267) 675-4601

*Attorneys for Plaintiffs*