IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| COURTNEY DRIVER, *et al.*, ) <br> ) <br> ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> HOUSTON COUNTY BOARD OF ) <br> ELECTIONS, *et al.*, ) <br> ) <br> ) <br> ) <br> **Defendants.** ) <br> ) | CIVIL ACTION NO. 5:25-cv-25 (MTT) |

## ORDER

On January 1, 2025, the Attorney General, through the Department of Justice ("DOJ"), sued Houston County and the members of its Board of Commissioners under Section 2 of the Voting Rights Act ("VRA") and 42 U.S.C. § 1983. Doc. 1. The DOJ alleged that the at-large method of electing members of the Houston County, Georgia, Board of Commissioners dilutes Black voting strength in violation of Section 2 of the VRA. *Id*. ¶¶ 1-3, 11-34. Houston County residents Courtney Driver and Michael Jones successfully moved to intervene to supplement the DOJ's allegations. Docs. 7; 13. Their complaint in intervention added the Houston County Board of Elections ("BOE") and its chair, Pamela Morgan, in her official capacity, as defendants. Doc. 14. In March 2025, the DOJ changed its mind and dismissed its claims against Houston County and the commissioners. Doc. 20. The Court realigned Driver and Jones as plaintiffs and dismissed Houston County and the commissioners on the plaintiffs' unopposed motion. Docs. 22; 23; 25. The BOE and Morgan ("defendants") now move to dismiss the

complaint (Doc. 14) in its entirety under Federal Rules of Civil Procedure 12(b)(1) and (6).  Doc. 29.  For the reasons that follow, the defendants' motion (Doc. 29) is **DENIED**.

## I. BACKGROUND

Plaintiffs Driver and Jones are Black residents and registered voters in Houston County, Georgia.  Doc. 14 ¶¶ 5, 6.  The plaintiffs seek declaratory and injunctive relief requiring the defendants to administer future elections for members of the Houston County Board of Commissioners using a method of election that complies with Section 2.  *Id*. at 9.

## II. STANDARD

### A. Standard Under 12(b)(1)

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack."  *Stalley v. Orlando Reg'l Heathcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  *Id*. at 1232-33 (quoting *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)).  A factual attack, however, "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony."  *Id.* at 1233.  The attack here is facial.  Doc. 29-1 at 14.

### B. Standard Under 12(b)(6)

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

P. 8(a)(2). To avoid dismissal pursuant to Rule12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. 2mbly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are 'merely consistent with a defendant's liability' fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv. Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *2mbly*, 550 U.S. at 555. Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

### III. DISCUSSION

**A. Plaintiffs Have an Implied Right of Action Under Section 2**

The defendants argue that Section 2 of the VRA does not create a private right of action or a private remedy. Docs. 29-1 at 4; 36 at 6–9. Specifically, the defendants

maintain that "the statute is devoid of any textual hook creating a private right of action to enforce § 2." See Doc. 29-1 at 5–6 (arguing that Section 2 is only enforceable by the Attorney General) (citing 52 U.S.C. § 10308), 7 (asserting that Section 3 "is not rights *creating* language … [r]ather, it simply acknowledges a cause of action where a private right already exists"). The defendants argue that in the absence of a textual basis for a private right of action, federal courts cannot imply one. *Id*. at 8–12 ("[F]ederal courts lack the authority to imply [a private right of action] when the remedial scheme has already been clearly set forth by Congress.").

1. Section 2 confers a private right

In *Singleton v. Allen*, 2025 WL 1342947, at *171–181 (N.D. Ala. May 8, 2025) and *Singleton v. Allen*, 740 F. Supp. 3d 1138, 1156–70 (N.D. Ala. 2024), a three-judge district court held that Section 2 confers a private right. Because *Singleton* conducted a comprehensive examination of Section 2 using the Supreme Court's analysis in *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183-86 (2023) as a guide, and this Court cannot say it better, the Court adopts *Singleton's* thoroughly reasoned analysis and conclusions.

The Court adds that Supreme Court's recent decision in *Medina v. Planned Parenthood S. Atl.*, 606 U.S. __, 145 S. Ct. 2219, 222 L. Ed. 2d 567 (June 26, 2025) reinforces *Singleton*'s approach. Considering a Medicaid provision enacted pursuant to Congress's spending power, *Medina* reaffirmed the private right analysis set forth in *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283, 285–86 (2002) and *Talevski*, 599 U.S. at 183-86. *Medina,* 145 S. Ct. at 2233–34. Thus, to establish that a statute secures an enforceable right, a plaintiff must show that the law in question "display[s] an

'unmistakable focus' on individuals like the plaintiff" and "'clear[ly] and unambiguous[ly]' uses 'rights creating terms.'" *Id*. at 2229 (citing *Gonzaga*, 536 U. S. at 283; *Talevski*, 599 U.S. at 183). *Singleton* meticulously followed *Gonzaga* and *Talevski* to determine that Section 2 confers a privately enforceable right. 2025 WL 1342947, at *171–77; 740 F. Supp. 3d at 1157–63. Thus, *Singleton*'s analysis and conclusions apply with even greater force after *Medina*.

*Medina* also reaffirmed that "a title may underscore that the statutory text creates a right" but it "'cannot enlarge or confer powers' by itself." 145 S. Ct. at 2237 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 19 n.14 (1981)). *Singleton* observed "[t]he title of Section 2 is '[d]enial or abridgement of right to vote on account of race or color through voting qualifications or prerequisites; establishment of violation,'" and "assign[ed] weight to this observation" in accordance with "(1) the rule that statutory provisions must be read in their context, and (2) the recognition in *Gonzaga* that [t]his framing is indicative of an individual rights-creating focus." 2025 WL 1342947, at *172–73; 740 F. Supp. 3d at 1157–58 (quoting *Talevski*, 599 U.S. at 171) (internal citations and quotations omitted) (alterations in original). Thus, *Singleton*'s consideration of Section 2's title for context and framing was entirely consistent with *Medina.*

In short, Section 2 of the VRA creates a privately enforceable right.

2. **The VRA creates a private remedy**

To find an implied private right of action, the Court must determine whether Section 2 "displays an intent to create not just a private right, but also a private remedy." *Alexander v. Sandoval,* 532 U.S. 275, 286–87 (2001). The plaintiffs maintain that Sections 3 and 14 of the VRA demonstrate Congress's intent to create a private remedy

-5-

that can be applied to Section 2.  Doc. 35 at 17-18; *see* 52 U.S.C. §§ 10302, 10310.  The Court agrees.

The plaintiffs' argument, framed within applicable precedent, may be summarized as follows: Section 3 authorizes remedial oversight measures when proceedings are brought by "the Attorney General *or an aggrieved person*" to "enforce the voting guarantees of the fourteenth or fifteenth amendment."  52 U.S.C. §§ 10302(a)–(c) (emphasis added).  Section 14 allows for attorney fees to a "prevailing party, other than the United States" in "any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment."  52 U.S.C. § 10310(e).  Courts in the Eleventh Circuit have concluded that the VRA, including Section 2, "is a constitutional exercise of congressional enforcement power under the Fourteenth and Fifteenth Amendments."  *United States v. Marengo Cnty. Comm'n*, 731 F.2d 1546, 1550 (11th Cir. 1984); *Georgia State Conf. of the NAACP v. Georgia*, 2022 WL 18780945 at *6 (N.D. Ga. Sept. 26, 2022) ("Section 2 is inevitably—at least in part—an action that 'enforce[s] the voting guarantees of the fourteenth or fifteenth amendment' as contemplated in Sections 3 and 14 of the VRA"); *Singleton*, 740 F. Supp. 3d at 1159–60 ("Section 2 is unambiguously an action or proceeding to 'enforce the voting guarantees of the … fifteenth amendment.'") (quoting 52 U.S.C. § 10310(e)).  Putting everything together, "[b]ecause a Section 2 action enforces the voting guarantees of the Fourteenth and Fifteenth Amendments, a Section 2 action is among the proceedings that Congress has implied, in Sections 3 and 14 of the VRA, that private parties may assert."  *Georgia State Conf. of the NAACP,* 2022 WL 18780945, at *5–6; *see Morse v. Republican Party*, 517 U.S. 186, 233–34 (1996) (explaining that when "Congress amended [Section 3] to cover

actions brought by 'the Attorney General *or an aggrieved person*,' … [it] must have intended to provide private remedies [in § 10]" and "[t]he same logic applies to § 14(e)").

The defendants challenge this analysis on two grounds.  First, the defendants, citing *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204, 1211 (8th Cir. 2023), contend that Section 3 does not create a private remedy because its "aggrieved person" language "was added to assist in the private prosecution of 'a proceeding under any statute' instituted to enforce the voting guarantees of the fourteenth amendment that *already* contained a private right of action."  Docs. 36 at 8 (quoting 52 U.S.C. §§ 10302(a), (b)); 29-1 at 7–8; *see Ark. State Conf. NAACP*, 86 F.4th at 1211 ("The next phrase after 'aggrieved person' mentions 'a proceeding under any statute,' which most reasonably refers to statutes that already allow for private lawsuits.").  But the defendants make no effort to reconcile this contention with Section 3's plain language, the Fourteenth and Fifteenth Amendments' voting-related protections, and Supreme Court and Eleventh Circuit precedent which, as discussed above, embrace Section 2 as a "statute to enforce the voting guarantees of the fourteenth or fifteenth amendment."  52 U.S.C. §§ 10302(a)–(c).  And despite defendants' urging, the Court is neither bound by the outlying (for now), divided panel Eighth Circuit decision in *Ark. State Conf. NAACP* nor persuaded by its reasoning.  *See Ark. State Conf. NAACP*, 86 F.4th at 1224 (Smith, J. dissenting) ("It would be ambitious indeed for a [lower] court ... to deny a private right of action in the light of precedent and history.") (alterations in original) (internal citations and quotations omitted).

Second, the defendants argue that Section 14 does not "necessarily refer[]" to private litigants, as the plaintiffs argue.  Doc. 36 at 9.  Rather, defendants maintain that

by allowing a "prevailing party" to recover attorney fees, Section 14 "ensure[s] state and local jurisdictions are adequately compensated for the expenses of litigation wrongly instituted by the United States." *Id*.  But plaintiffs merely note, based on substantial precedent, that Section 14's authorization of attorney fees to "prevailing part[ies]" who are not the Government "'reinforces the idea that Congress contemplated suits by private parties when it enacted Section Two.'"  Doc. 35 at 18 (citing *Singleton*, 2025 WL 1342947, at *174; *Morse*, 517 U.S. at 234).  In short, defendants' argument that Section 14 contemplates parties besides private litigants fails to move the needle.

For the reasons stated, the Court is satisfied that the text and structure of the VRA evidence Congress's intent to create a private remedy for Section 2.

**B. Plaintiffs are Entitled to Sue Under Section 1983**

Next, the defendants argue that Section 2 cannot be individually enforced under Section 1983.  Doc. 29-1 at 12.  "Plaintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes."  *Gonzaga,* 536 U.S. at 284–85.  Because this Court finds that Section 2 confers an individual right, "the right is presumptively enforceable by § 1983."  *Id*.

To overcome this presumption, the defendants must demonstrate that Congress did not intend that Section 1983 be available to enforce Section 2, either because the statute "expressly forbid § 1983's use" or because Congress precluded its use "implicitly, by creating 'a "comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."'"  *Talevski*, 599 U.S. at 186 (quoting *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005)).  The defendants argue

that Congress impliedly foreclosed individual enforcement of Section 2 under Section 1983 because "[Section 12 of] [t]he VRA contains … a comprehensive enforcement process through the Attorney General" which is "incompatible" with individual enforcement under Section 1983.  Docs. 29-1 at 13; 38 at 2 (citing 52 U.S.C. §§ 10302, 10308, 10310; *Medina*, 145 S. Ct. at 2229).

In *Talevski*, the Supreme Court examined its precedent finding implicit preclusion and determined that each case "concerned statutes with self-contained enforcement schemes that included statute-specific rights of action."  *Talevski*, 599 U.S. at 189 (citing *Rancho Palos Verdes*, 544 U.S. at 120–23; *Smith v. Robinson,* 468 U.S. 992, 100–13 (1984); *Middlesex County Sewerage Authority v. National Sea Clammers Assn.,* 453 U.S. 1, 6–7, 19–21 (1981)).  Further, "[e]ach such statute required plaintiffs to 'comply with particular procedures and/or to exhaust particular administrative remedies' under the statute's enforcement scheme before suing under its dedicated right of action."  *Id*. (quoting *Fitzgerald v. Barnstable School Comm.,* 555 U.S. 246, 254 (2009)).  *Talevski* concluded that such comprehensive enforcement schemes were incompatible with individual enforcement under Section 1983 because "in all three cases, § 1983's operation would have thwarted Congress's scheme coming and going: It would have 'circumvented' the statutes' presuit procedures, and would have also 'given plaintiffs access to tangible benefits' as remedies that were 'unavailable under the statutes.'"  *Id*. (quoting *Fitzgerald*, 555 U.S. at 124).

The defendants here "ha[ve] identified no equivalent sign [of incompatibility] in the" VRA.  *Id*. at 190.  Unlike the statutes identified in *Talevski*, the VRA does not "provide[] an express private right of action with procedural and substantive

requirements" or a private administrative remedy.  Doc. 35 at 26-27.  And Section 12, while it confers enforcement authority to the Attorney General, lacks any indicia of congressional intent to preclude individual enforcement under Section 1983.  The defendants argue that Congress must have intended the Attorney General to exercise sole enforcement authority because the "VRA alters the careful balancing of state and federal power in the context of elections" (Doc. 36 at 11), but the defendants fail to offer any suggestion of incompatibility in Section 12 or elsewhere in the statute.  "The attendant presumption is that § 1983 can play its textually prescribed role as a vehicle for enforcing [statutorily conferred] rights, *even alongside a detailed enforcement regime that also protects those interests*, so long as §1983 enforcement is not 'incompatible' with Congress's handiwork."  *Talevski*, 599 U.S. at 188–89 (emphasis added) (citing *Rancho Palos Verdes*, 544 U.S. at 120; *Blessing v. Freestone*, 520 U.S. 329, 347–48 (1997)).  Enforcement by the Attorney General is thus, presumptively, a non-exclusive means to vindicate voting rights.

Further, as the plaintiffs point out, the Eleventh Circuit held in *Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) that an Attorney General enforcement provision[1] virtually identical to Section 12 of the VRA[2] did not preclude a Section 1983 remedy.  *Id*. at 1296 ("Neither [the statute's] provision for enforcement by the Attorney General nor

---

[1] "Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice which would deprive any other person of any right or privilege secured by subsection (a) or (b), the Attorney General may institute for the United States, or in the name of the United States, a civil action or other proper proceeding for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order."  52 U.S.C. § 10101(c).

[2] "Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by [specified VRA sections], the Attorney General may institute for the United States, or in the name of the United States, an action for preventive relief, including an application for a temporary or permanent injunction, restraining order, or other order …."  52 U.S.C. § 10308(d).

Congress's failure to provide for a private right of action expressly in [the statute] *require* the conclusion that Congress did not intend such a right to exist."). Rather than substantively address this argument, the defendants respond that *Schwier* is "irrelevant because it relied on provisions of the Civil Rights Act separate from the VRA." Doc. 36 at 8 n. 3. The Court is unconvinced. *Schwier*'s reasoning confirms the Attorney General enforcement provision does not evince a "careful congressional tailoring that § 1983 actions would distort." *Talevski*, 599 U.S. at 190; *Schwier*, 340 F.3d 1284 at 1294–96 (citing *Allen v. State Board of Elections*, 393 U.S. 544, 556–57 (1969); *Morse,* 517 U.S. at 193).

Accordingly, private plaintiffs may enforce Section 2 either through an implied private right of action, Section 1983, or both.

## C. Plaintiffs Have Sufficiently Pleaded Their Vote Dilution Claims

The defendants argue that to show standing, the plaintiffs must "allege they live in an area of the County where a majority-Black district could be drawn or that such a district could be drawn in their portion of the County." Doc. 29-1 at 13. Defendants cite no authority supporting this assertion and the Court is aware of none. *See Rose v. Raffensperger,* 511 F. Supp. 3d 1340, 1352 (N.D. Ga. 2021) ("To demonstrate an injury-in-fact for purposes of a vote dilution claim, Plaintiffs must show that they (1) reside and are registered voters in districts where alleged dilution occurred, and (2) are members of a protected class whose voting strength was diluted."). The plaintiffs have sufficiently established standing.

-11-

## IV. CONCLUSION

In sum, the defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6) (Doc. 29) is **DENIED**.

**SO ORDERED**, this 2nd day of September, 2025.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT