# EXHIBIT E

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

COURTNEY DRIVER, et al.,

      Plaintiffs,

vs.                                   Civil Action No.
                           5:25-cv-0025-MTT

HOUSTON COUNTY BOARD OF
ELECTIONS, et al.,

      Defendants.
_____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

JACQUELINE ROZIER, et al.,

      Plaintiffs,

vs.                                   Civil Action No.
                           5:25-cv-478-MTT

HOUSTON COUNTY BOARD OF
ELECTIONS, et al.,

      Defendants.

VIDEOTAPED DEPOSITION OF
DANIEL S. PERDUE
March 10, 2026
Commencing at 9:07 a.m.
Concluding at 1:32 p.m.

Houston County Board of Commissioners
200 Carl Vinson Parkway
Warner Robins, Georgia 31088

Reported by:  Janet S. Paris, CCR B-1835

Daniel S. Perdue                    March 10, 2026
Driver, Courtney, et al. v. Houston County Board o

Page 17

A    No.

Q    Now, what does the Board of Commissioners in Houston County do?

A    In my mind the two primary roles of the Board of Commissioners in Houston County revolve around public safety and infrastructure needs in Houston County.  It is -- the primary way through which we support public safety endeavors is through funding.  We are not the sheriff's office.  I joke frequently that the first thing they tell you within the first 15 minutes of newly elected county commissioner training is you're not the boss of the sheriff or quite frankly, any other elected official.  And if that's why you ran for county commission, to be able to boss the Sheriff around, you've got the wrong job.

And so we -- the primary support for public safety comes through funding the sheriff's budget requests and then largely the Commission also supports infrastructure needs in Houston County.  So those are the two primary jobs and tasks that I believe the Houston County Commission serves.

In general, we're the legislative body for the local government of Houston County.  We do not oversee the school system.  We don't oversee other constitutional officers, even if we do help set the budget for those offices.  We don't -- our power and our jurisdiction is

Daniel S. Perdue                    March 10, 2026
Driver, Courtney, et al. v. Houston County Board o

Page 18

limited within city boundaries and municipal boundaries.
We can certainly pass codes that apply in the
unincorporated areas of Houston County, but those codes
would not apply within city municipalities many times.
That's the role of the Board of Commissioners in my
opinion.

Q    And what is the current composition of the
Board?

A    Would you like names?

Q    Yes.

A    Okay.  Sure.  Post 1 is occupied by myself.
Post 2 is occupied by Shane Gotwalls.  Post 3 is occupied
by Commissioner Gail Robinson.  Post 4 is occupied by Tal
Talton.  That was the post that I previously occupied.  And
Post 5 is occupied by Mark Byrd.

Q    Now, what does, specifically does your role of
chair entail?

A    So the role of chair in Houston County is a
full-time elected role.  I say, you know, for simplified
purposes, I'm essentially the chief executive officer of
Houston County.  It is a more than 40-hour-a-week job
operating the business of Houston County.

Q    And how does that differ from the roles of the
other Board of Commissioner members?

A    The other roles are part-time roles.  We are

Daniel S. Perdue                    March 10, 2026
Driver, Courtney, et al. v. Houston County Board o

Page 19

compensated differently.  I'm compensated at a full-time level.  They are compensated at a part-time level.  When Commissioner Talton asked me how much time at one of those part-time roles would consume when he was considering running, I said, It will consume all the time that you will give it, which is the case.

You can turn, you can certainly turn those things into full-time job jobs if you would like, as a lot of part-time elected roles.  But in our case, all four of those people are not retired.  They have active jobs and those roles are part-time.  So for lack of a better analogy, they sort of act as the legislative body.  In our meetings, I do not vote unless there is a tie.  And I act as the executive body.

Q    Do -- in your day-to-day, do you handle different subject matter areas than the part-time Board of Commissioner members?

A    Handle?  I would say no.  We all handle the same amount, the same types of subject matters.  A lot of the decisions that I make then go before the Board of Commission with a recommendation from staff to act in a certain way legislatively.  So we handle the same types of issues.  I am frequently more in-depth on the issues than they are.

Q    So you mentioned the priority -- priority

Daniel S. Perdue                    March 10, 2026
Driver, Courtney, et al. v. Houston County Board o

Page 24

Q    Are you aware of any boards of commissions that are elected via single member districts?

A    Yes.

Q    And are you aware that prior to 1990, Houston County did not elect its chair via at-large elections?

A    Yes.

Q    If the chairman position were elected via a method other than at-large elections, would you agree that the function of the chair would not change?

MR. TYSON:  Object to the form.  You can answer.

THE WITNESS:  I think it would be challenging to elect a chair other than an at-large method.  As I talked about in considering how I reached the decision to run for chair, I was at a point in my life where I could set aside the small businesses that I had and take on a full-time role.  The other commissioners were not.

I think if the chair were, for example, elected amongst its peers, an election of five to select the chair, you could quite possibly wind up with a situation where no one wanted to be chair, where they all wanted a part-time position, but no one wanted to be the chair.  I think it is vitally important that the chair is elected at-large.

Page 32

A    As I understand, the system was changed in the early 1970s.  It was then later discovered that that change was not pre-cleared and the Board of Commissioners at that time went out to the Department of Justice and got, I guess, post-clearance for that change.

Q    I would like to introduce Plaintiff's Exhibit Number 2.

(Whereupon, Plaintiff's Exhibit No. 2 was marked for identification.)

Are you familiar with this document?

A    This is probably the first time I've seen it.

Q    Do you have any understanding as to why the Board of Commissioners at-large system as estab- -- as changed in 1970 was not submitted for pre-clearance until 1990?

A    I do not.

Q    It was in 1990 that the full-time chairman position for the Board of Commissioners was established in its current form, correct?

A    I believe so, yes, ma'am.

Q    Now, your father, Sonny Perdue, was involved in Houston County politics, correct?

A    At what time?

Q    In the late 1980s to 1990s.

A    The way he would say it, because I've heard him

Daniel S. Perdue                    March 10, 2026
Driver, Courtney, et al. v. Houston County Board o

Page 75

A    I disagree with that.  I think what I, what I --
I think what I said is that the chair was not always a
full-time position.  I believe that commissioners in
Houston County have always been elected at-large.

Q    But the chair position specifically, that has
always been elected at-large from your understanding?

A    The method for selection of the chair has
changed.  So prior to it changing into a full-time chair
position, it was selected from amongst the members.  You
did not run countywide for the chair position, but the
chair was elected at-large.

Q    Understood.

A    Okay.

Q    And do you have any reason to believe that that
system for electing -- or selecting the chair was
ineffective?

A    Which system?

Q    The system, the prior to 1990 system where it
was selected amongst the members.

A    I believe that the role of the chair was
significantly different during that time.

Q    Could you explain?

A    Houston County is a significantly larger county
than it was prior to 1990.  We did not have a full-time
chair prior to 1990.  You had five part-time commissioners

Page 76

that elected a chair from amongst themselves.  At least that's my understanding.  So the chair was not a chief executive of the county.  The county clerk or other people did more day-to-day work without guidance from the chair.

Q    Okay.  And just so I understand, what allowed the county chair to become, or the commission chair to become a chief executive was the ability to become a full-time elected official; is that right?

A    I believe the legislation that was presented in the record earlier is what made that change.

Q    I understand.  I'm talking about the ability to perform the duties of, as you currently understand the role of chair.

A    Ask the question again, please, sir.

Q    Was the change from part-time to full-time elected official the mechanism that allowed the commission chair to perform its duties, its full duties now currently envisioned?

A    Okay.  Let's walk through that question piece by piece.  Okay?

Q    Yeah.

A    All right.  I'm sorry.  I'm really trying to hang in there with you.

Q    That's okay.

A    Okay.

Page 77

Q    The county chair position changed from a part-time elected role to a full-time elected role; is that correct?

A    That's my belief, yes, sir.

Q    Okay.  Prior to that change, the responsibilities of the chair were less substantial than they currently are?

A    Certainly.

Q    Okay.  Was part of the reason why the responsibilities of the chair position enlarged because of the transfer from part-time to full-time elected official?

A    I can't really speak to why that change was made.  But the way you're asking the question, it's sort of like the tail wagging the dog in my opinion.  Like someone wanted a full-time role so they expanded the role or did they want a more expansive role of the chairman and they realized they -- I don't know.  I was not involved in that decision to make that change.

Q    Understood.  You understand the commission election system in Houston County to be staggered, correct?

A    Yes.

Q    Do you believe that this is the most effective system, the staggered system the most effective system for elected officials in Houston County?

MR. TYSON:  Object to the form.  You can

Daniel S. Perdue                    March 10, 2026
Driver, Courtney, et al. v. Houston County Board o

Page 117

A    Sometimes.

Q    Okay.  Could you remind me what your educational background is?

A    I have a bachelor's in information -- I have a bachelor's of science in information systems.

Q    Okay.  Beyond serving as chair and serving as a commissioner, what experience do you have in public administration?

A    Very little.

Q    You mind just going into some detail?

A    I would say almost none.  So my prior public experience, I have worked in large governmental organizations.  I've seen it from, I would say the employee side of the things both in my time at Middle Georgia Technical College, which is now Central Georgia Technical College, and Fort Valley State University.  But I do not, I would not in any way say that I'm qualified as a public administrator.

Q    I understand.  Neither am I.  And these counties that you're aware of with county managers, would you say that their governments are less efficient or less productive than a county with an elected chief executive?

MR. TYSON:  Object to form.

THE WITNESS:  I have heard stories from, I talked a little while ago about how in our case,

Daniel S. Perdue                    March 10, 2026
Driver, Courtney, et al. v. Houston County Board o

Page 118

you know, I don't object to.  In fact, I encourage each of our commissioners to reach out to any employee of Houston County that they would like to, to interact with that department head or employee or try to get to the bottom of the situation or try to provide better constituent services or try to get trash picked up on the side of the road.

I know that our department heads have been responsive to individual commissioners without me getting involved, which I think is phenomenal.  I know of at least some cases where a county manager believes that they are the sole conduit for information to flow to and from the Board of Commissioners.  I don't think that that would serve the citizens of Houston County in the best way.

BY MR. ANDINO:

Q    Would you mind just telling me why you don't believe that?

A    I think we have five elected leaders of this government.  Each one of them has different connections, different people they talk to, different areas of the county that they may frequent more or less.  And I think it really, if all of that is narrowed down to a, going through

Daniel S. Perdue                          March 10, 2026
Driver, Courtney, et al. v. Houston County Board o

Page 119

a single person, I think it creates a bottleneck.  And then that own individual person can determine whether or not it's -- they think it's the right decision.  It's another layer of obstruction between citizens and their elected leadership.

Q    And what are your feelings on like a mixed system, where you have some seats that are at-large and some seats that are district based?

A    For Houston County in particular?

Q    For Houston County, yes.

A    It is my understanding that typically in working towards a resolution of a Section 2 case, that adding seats to the Board of Commissioners or adding seats to the governing body, changing the number of governing body, is typically not allowed in settling those suits.

Q    I understand the Section 2.  I'm trying to just understand your opinion with a mixed system.  Is that more effective or less effective than a system based only on single district members?

MR. TYSON:  Object to the form.

THE WITNESS:  Are you saying currently we have a single district?  I'm sorry.

BY MR. ANDINO:

Q    That's okay.  That's okay.  I can clarify.  Actually, you know what?  I've taken up a lot of time.