**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| COURTNEY L. DRIVER, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>HOUSTON COUNTY BOARD OF ELECTIONS, *et al.*,<br><br>*Defendants*. | Civil Action No. 5:25-cv-00025-MTT |

**DEFENDANTS' RESPONSE IN PARTIAL OPPOSITION TO *DRIVER* PLAINTIFFS' MOTION TO AMEND COMPLAINT AS TO COUNT II**

**INTRODUCTION**

Plaintiffs' Motion to Amend does far more than seek to address the impact of *Louisiana v. Callais* on their case as permitted by this Court—it seeks to add a new and previously unasserted intentional racial discrimination claim that Plaintiffs could have brought when they first filed this lawsuit. The new claim is not related to the Supreme Court's decision on Section 2 of the Voting Rights Act in *Callais*. It is a separate constitutional claim that would dramatically change the discovery required in this case. While this Court permitted Plaintiffs to amend related to their Section 2 claim under *Callais*, this Court should deny Plaintiffs' request to amend by adding a brand-new, expansive constitutional claim for several reasons.

First, Plaintiffs' Motion to Amend exceeds the scope of the judicial permission they previously sought and any amended complaint should be limited to what this Court allowed. This Court authorized amendments related to *Callais*, not the institution of a totally different case.

Second, this Court should deny the additional constitutional claim in Count II because it is untimely. Plaintiffs could have brought an intentional racial discrimination claim at the outset of this case and chose not to do so. *Callais* addressed the parameters and judicial evaluation of a *Section 2 claim*, which Plaintiffs initially brought and on which Defendants moved for summary judgment. But the constitutional claim now sought by Plaintiffs was available before *Callais* and was not affected by *Callais.* And it is not as if Plaintiffs were unaware of that option—the new language Plaintiffs add to allege Count II is based on public record information that existed for years prior to Plaintiffs' initial pleadings in this case and did not require discovery.

Third, this Court should also deny leave to amend to add the additional constitutional claim in Count II because it is prejudicial. Addressing allegations of intentional racial discrimination will require a significant amount of different discovery topics—not mere "additional fact and expert discovery pertaining to *Callais* requirements" as Plaintiffs originally proposed and this Court authorized. Doc. 75-1 at 6; Doc. 87 at 1. And Plaintiffs' proposed addition risks any timeline

for this case with the expansive scope that would include documents likely subject to legislative privilege because the intent of the legislature is relevant as the body that sets the method of election for the County.

But if this Court disagrees with Defendants and grants the full amended Complaint, it should hold a status conference with all parties, then set a new scheduling order with sufficient time for new experts and additional discovery. There is no way to complete the required additional discovery from the new constitutional count in a short period of time, as Plaintiffs originally proposed.

This Court should deny Plaintiffs' attempt to expand this case in a new direction they could have taken previously.

## ARGUMENT AND CITATION OF AUTHORITY

This Court already modified the scheduling order solely to permit additional discovery on issues related to *Callais* and to permit Plaintiffs to amend their Complaint in light of *Callais*. Doc. 87. As a result, this response only opposes the non-*Callais* amendments Plaintiffs seek, specifically Count II.[1]

Plaintiffs correctly identify that this Court need not "allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated

---

[1] Defendants do not waive any defenses or right to raise additional arguments about the sufficiency of Plaintiffs' allegations in their proposed amended Complaint in a motion to dismiss if this Court grants Plaintiffs' motion to amend in whole or in part.

failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Nothing in *Callais* changed the status of the constitutional claim Plaintiffs seek to bring. Plaintiffs could have brought their constitutional claim long before now and allowing the amendment to add a new claim (Count II) after Defendants moved for summary judgment and after this Court specifically authorized only *Callais*-related amendments would be prejudicial.

## I. Plaintiffs' motion exceeds what this Court authorized.

Procedurally, Plaintiffs have exceeded the scope of this Court's Order granting leave in seeking their Amended Complaint with a new constitutional count. Doc. 87. Plaintiffs specifically sought to amend the scheduling order in this case "in light of the U.S. Supreme Court's April 29, 2026 decision in *Louisiana v. Callais*." Doc. 75-1 at 1. At that time, in representations to this Court, Plaintiffs explained that any amendment to their complaint would be "so that the pleadings may conform to the governing legal standard announced in *Callais*." Doc. 75-1 at 6 n.2. This Court then extended the "deadlines for moving to amend Plaintiffs' Complaint" so they could address issues "pertaining to *Louisiana v. Callais*, 146 S. Ct. 1131 (2026)." Doc. 87 at 1. Plaintiffs' Motion to Amend then claimed they were

amending "the complaint in response to the Supreme Court's intervening decision in *Louisiana v. Callais*," Doc. 88-1 at 2, but that is not what Plaintiffs did. Doc. 88-1 at 1. Some of Plaintiffs' proposed modifications in their proposed Amended Complaint attempt to address the *Callais* standard for their Section 2 claim.[2] Doc. 88-2 at 16. But adding a brand-new intentional racial discrimination count outside of Section 2 is not related to *Callais* at all and thus is beyond this Court's leave. Doc. 88-2 at 16–17.

Because Count II is an amendment outside what this Court permitted, this Court should deny leave to amend the Complaint to include the proposed new count before it reaches the merits of Plaintiffs' motion.

## II. The addition of a new constitutional claim is untimely because Plaintiffs had all the information cited when they originally brought this case.

If this Court considers the merits of Plaintiffs' motion, it should still deny it. Almost a year and a half ago, Plaintiffs brought this case solely as a Section 2 claim, which does not include a requisite intent element. Doc. 14.[3] Only after the close of

---

[2] Defendants do not agree that Plaintiffs meet, or could meet, the requirements of *Callais* as demonstrated by the allegations as amended, the record already developed, and the facts of this case.

[3] Plaintiffs' operative complaint was not the first complaint in this case, but was a Complaint in Intervention. Doc. 14. Thus, Plaintiffs already had the opportunity to consider the original complaint brought by the United States and offer a modified version when they sought to enter this case.

extensive discovery, when facing a potential "adverse summary judgment ruling" on that claim on the law before and after *Callais* did Plaintiffs seek to amend to add a new, intentional-discrimination constitutional count. *Local 472 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada v. Georgia Power Co.*, 684 F.2d 721, 724 (11th Cir. 1982). Like the district court in *Local 472*, this court should deny the motion as untimely. *See also In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1162 (5th Cir. 1979).

Plaintiffs did not need any new data or information to bring an intentional-discrimination claim. In their proposed Amended Complaint, Plaintiffs added information about the original creation of the Board of Commissioners, including how it had been elected on a countywide basis as long as it has existed. Doc. 88-2 at ¶¶ 13–30. Each of the new paragraphs cites to various Georgia Laws passed at various historical points along with one newspaper article. *Id*. Further, the additional allegation about public meetings was previously known to Plaintiff Georgia NAACP by its own admission. *Id*. at ¶ 31.[4]

[4] Plaintiffs have also deleted a paragraph about the electoral success of Commissioner Houston Porter, who was elected on a countywide basis three times between 1980 and 1992. Doc. 88-3 at 13 (formerly ¶ 21 of the Complaint in Intervention). This fact further emphasizes the reality Plaintiffs wish to avoid: where is the discriminatory intent or effect when a Black Commissioner was being elected at a time when the county had far less Black population than it does today?

Plaintiffs' addition of long-past history to their proposed Amended Complaint seems to be an elaborate exercise in missing the point of *Callais*. The point was that plaintiffs must address ***present-day evidence*** and could not just gesture to history from years gone by. But after asking this Court for time to consider *Callais*, Plaintiffs now offer pages of allegations ranging from what occurred more than 100 years ago to what occurred almost 40 years ago. Doc. 88-2 at 3-8.

At root, Plaintiffs' new constitutional claim is untimely because they delayed seeking to add it for almost a year and a half. Plaintiffs cite *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001), presumably for the proposition that the "mere passage of time" should not preclude amendment. Doc. 88-1 at 5. But *Bryant* reversed a denial of a motion to amend only because the record reflected nothing *beyond* the passage of time—no prejudice, no bad faith, no dilatory motive—and *Bryant* makes clear that denial is proper where those additional grounds exist. 252 F.3d at 1163–65. And they exist on the facts of this case: (1) Plaintiffs filed their initial Complaint in Intervention (which operated as an amended complaint because Plaintiffs had time after the filing of the initial Complaint to consider every viable claim); (2) Plaintiffs only sought to add the new count after Defendants filed their motion for summary judgment on their sole prior claim; (3) Plaintiffs' proposed factual additions rest on public enactments

from 1915–1990, facts fully available to Plaintiffs before filing their initial pleading; and (4) as discussed below, during discovery, Plaintiffs' own experts disclaimed conducting any analysis related to intentional discrimination and did not opine on legislative intent, with Plaintiffs themselves identifying no evidence of intentional discrimination. This case is not *Bryant*.

Because Count II is not related to *Callais* and could have been brought earlier, this Court should deny Plaintiffs' motion as to Count II. *See also Maynard v. Board of Regents of Div. of Universities of Florida Dept. of Educ.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (affirming the denial of a motion to amend filed on the last day of an already extended discovery period as there "seems to be no good reason why [the plaintiff] could not have made the motion earlier").

## III. The additional constitutional claim is prejudicial.

Even if this Court concludes the proposed new constitutional count is timely, it should also deny the requested amendment because it dramatically expands this case far beyond the changes in *Callais* and severely prejudices Defendants. Plaintiffs seek to require the taxpayers of Houston County to shoulder entirely different discovery on a claim Plaintiffs chose not to bring originally—and only sought to bring after *Callais* doomed their original claim. *See* Doc. 71. Plaintiffs' proposed new constitutional count would effectively restart the case. *See generally, Maynard*, 342 F.3d at 1287 (a district court properly denied the

amendment to add a new claim at the end "of the already extended discovery period would have produced more attempts at discovery, delay[ing] disposition of the case, and likely prejudiced [the defendant]").

**A. Plaintiffs' proposed constitutional claim is prejudicial because it seeks to avoid Defendants' motion for summary judgment.**

Discovery closed in this case on March 25, 2026, Doc. 44 at 3, and Defendants filed their motion for summary judgment on April 24, 2026, Doc. 63. This Court later only re-opened discovery for limited *Callais*-related purposes. Doc. 87 at 1. But Count II is a different legal claim, with different elements, requiring different proof, and this Court should reject Plaintiffs' attempt to shift the litigation onto new ground only after Defendants filed their dispositive motion. *Lowe's Home Centers v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002) (affirming denial of motion to amend where leave is sought "following the close of discovery, past the deadline for amendments and past the deadline for filing dispositive motions" (citing *Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821 (11th Cir. 2000)); *see also Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) ("Prejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided.").

The prejudice to Defendants is no less acute than in *Campbell*. Defendants completed and filed a Motion for Summary Judgment on the entirety of Plaintiffs' claims under the operative complaint, consistent with the law at the time and now

with *Callais*. Doc. 63. Plaintiffs now seek to rewrite their pleading rather than having to answer Defendants' motion—precisely the maneuver "designed to avoid an impending adverse summary judgment" that warrants denial. *Lowe's*, 313 F.3d at 1315. To permit the case to change dramatically at this point rewards Plaintiffs for waiting to bring their constitutional claim until after the record was fully developed, discovery was closed, and Defendants had moved for summary judgment.

**B. Plaintiffs' proposed constitutional claim is prejudicial because it requires dramatically expanded discovery.**

In addition to trying to avoid the pending summary-judgment motion, the proposed new constitutional count also will require a whole new direction for this case. To be clear, Plaintiffs are not seeking to bring a new claim—they are seeking to bring a new case.

*1. A constitutional claim is completely different from a Section 2 claim.*

Plaintiffs' reasoning for this new count is that it "is the type of claim *Callais* itself contemplated." Doc. 88-1 at 3. Respectfully, that makes no sense. *Callais* was a racial gerrymandering case with the state offering a defense that Section 2 required the racially drawn district. *Callais*, 146 S. Ct. at 1161. Nothing in *Callais* contemplates a separate constitutional claim, especially when a finding of liability under Section 2 "does *not* demand a finding of intentional discrimination." *Id*. at 1156 (emphasis added).

In fact, the whole point of Section 2's existence is to enforce the prohibition on intentional racial discrimination in the Fifteenth Amendment *without* requiring a finding of intentional discrimination. *Id*. at 1155–56; *see also Thornburg v. Gingles*, 478 U.S. 30, 35 (1986) (noting amendment so that "a violation could be proved by showing discriminatory effect alone and to establish as the relevant legal standard the 'results test'" in contrast to intentional-discrimination test). Section 2 allows courts to consider "the imposition of liability without demanding that the courts engage in the fraught enterprise of attempting to determine whether the state legislature as an institution . . . was motivated by race." *Callais*, 146 S. Ct. at 1156. But now Plaintiffs propose this Court engage in exactly that type of fraught enterprise about Houston County's countywide method of election.

To hide the breadth of what Plaintiffs ask, they claim the standard for intentional-discrimination claims "aligns with the intent evidence already developed in this case." Doc. 88-1 at 3. Setting aside how "intent evidence" has been developed in a case that does not involve intent, the standards in *Rogers v. Lodge*, 458 U.S. 613 (1982) and *Village of Arlington Heights v. Metro. Housing Development Corp*., 429 U.S. 252 (1977), which control intentional-discrimination claims, bear almost no resemblance to a Section 2 case—especially this one.

As referenced above, motives are irrelevant to a Section 2 case, because the primary question is whether the challenged practice "interacts with social and

historical conditions" to cause unequal *opportunity*. *Gingles*, 478 U.S. at 47; *see also Brnovich v. Dem. Nat'l Comm.*, 594 U.S. 647, 660 (2021). But an intentional-discrimination claim puts "racially discriminatory motivation" front and center. *Greater Birmingham Ministries v. Sec'y of State for State of Alabama*, 992 F.3d 1299, 1322 (11th Cir. 2021) (quoting *City of Mobile v. Bolden*, 446 U.S. 55, 62 (1980)). This means discovery is and must be dramatically different—the existing claim does not require inquiries into motivation, while the proposed new claim makes that inquiry *necessary*.

2. *The constitutional claim requires dramatically different discovery.*

Plaintiffs ignore this required expanded scope of the case and discovery. Doc. 88-1 at 3. Defendants and Plaintiffs have developed a record in this case under the prevailing standards under Section 2, not intentional racial discrimination claims.[5] Intentional discrimination claims require significantly more and different evidence, both for Plaintiffs and for Defendants.[6]

---

[5] Plaintiffs continue to ignore the countywide election of two Black members of the Board of Education in nonpartisan elections in their proposed amended Complaint. *See* Perdue Dep. (Doc. 66) at 142:23–143:6.

[6] If a plaintiff establishes discriminatory intent and effect, "the burden shifts to the law's defenders to demonstrate that the law would have been enacted without this racial discrimination factor," which means Defendants must be able to develop facts that are unnecessary to a Section 2 claim in discovery if this Court permits amendment. *League of Women Voters of Florida Inc. v. Florida Sec'y of State*,

The specific topics of discovery in an intentional-discrimination case are focused on a variety of items related to the *adoption* of a method of election. These include "(1) the impact of the challenged law; (2) the historical background; (3) the specific sequence of events leading up to its passage; (4) procedural and substantive departures; and (5) the contemporary statements and actions of key legislators. And, because these factors are not exhaustive, the list has been supplemented: (6) the foreseeability of the disparate impact; (7) knowledge of that impact, and (8) the availability of less discriminatory alternatives." *Greater Birmingham Ministries*, 992 F.3d at 1322. Only one of these factors (historical background) bears any resemblance to the standard in a Section 2 case, and all explore the motivations of the legislature. All of this intent-based evidence is in addition to evidence of discriminatory effects, which is also required. *League of Women Voters of Florida*, 66 F.4th at 922. And this Court would be required to permit discovery on each of these factors to consider the new count Plaintiffs seek to bring.

This means that additional topics of discovery required by the new constitutional count could require evaluation of at least (1) legislative processes

---

66 F.4th 905, 922 (11th Cir. 2023) (quoting *Greater Birmingham Ministries*, 992 F.3d at 1321).

over the last 100 years[7]; (2) contemporaneous statements and drafting history for each amendment; (3) any relevant historical background information on the legislative actions[8]; (4) the foreseeability of a disparate impact on Black voters; (5) any less discriminatory alternatives; (6) additional non-racial reasons for the countywide system. *Greater Birmingham Ministries*, 992 F.3d at 1322.

Plaintiffs' claim that there is intentional-discrimination evidence in the record of this case, Doc. 88-1 at 3, is strange, because it is directly contrary to statements made under oath by multiple witnesses. Plaintiffs themselves, as well as their experts, have repeatedly disclaimed *any* effort to make an intentional-discrimination showing on the current record:

- *"Q. And just to be clear, you didn't engage in an* Arlington Heights *analysis to determine whether any intent existed in the electoral system for County Commission?*

  *A. That's correct."*

  Bagley Dep. (Doc. 80) 59:23–60:2.

---

[7] This factfinding component must also recognize that the legislature's good faith is presumed and past discrimination from a prior legislature is not automatically carried forward to future actions of a different legislature, further complicating the issues. *See Abbott v. Perez*, 585 U.S. 579, 604–05 (2018); *see also League of Women Voters of Florida*, 66 F.4th at 923.

[8] For example, this Court would have to weigh the reality that, at the time, the "vast majority of the state's counties elected their county governments at large." Laughlin McDonald, *A Voting Rights Odyssey: Black Enfranchisement in Georgia* (Cambridge Univ. Press 2003) at 131.

- *"Q. Are you offering any opinions about the intent of the legislature in adopting the county-wide method of election for Houston County?*

  *A. No."*

  Bagley Dep. (Doc. 80) 24:20–23.

- *"Q. And so the sitting here today then, it sounds like you're saying you can't think of any examples of overt acts of racism by Houston County because you don't know necessarily what the intention is behind what you've heard; is that right?*

  *A. Yeah. I'm saying I'm not calling anyone racist because I, again, I don't know anyone's intentions."*

  Driver Dep. (Doc. 81) at 53:23–54:4.

Far from there being "intent evidence *already developed* in this case," Doc. 88-1 at 3 (emphasis added), the actual record demonstrates there is no such evidence.[9]

The intentional-discrimination claim also changes the sources from which the parties need discovery. Plaintiffs recognize that the County has no ability to change its own method of election. *See* Doc. 88-2 at ¶¶ 13–30 (repeatedly citing the actions of the Georgia legislature in making changes to that system). That means any relevant discovery to both liability and the defense of the system must involve the Georgia General Assembly, as the only body which can change and has changed the method of election, and not the existing county-focused record.

---

[9] This point further emphasizes why Defendants opposed the motion for leave to amend—because Plaintiffs appear to need new Plaintiffs and new experts, when considering the existing deposition testimony. *See generally* Doc. 78.

### C. Plaintiffs' proposed constitutional claim is prejudicial because it indicates there will be discovery disputes on legislative documents.

Requiring discovery from the Georgia General Assembly creates an additional issue of prejudice: it is likely that some of the documents and information would be covered by legislative privilege, causing further discovery issues for this Court to resolve. *See Pernell v. Florida Bd. of Governors of State Univ.*, 84 F.4th 1339, 1343 (11th Cir. 2023); *see also In re Georgia Senate Bill 202*, 1:21-MI-55555-JPB, 2023 WL 3137982, at *2 (N.D. Ga. Apr. 27, 2023) (granting motion to quash based on legislative privilege). That process will cause further delay and would be solely due to Plaintiffs now bringing a new constitutional count, because none of that legislative-focused discovery would be relevant to the original Section 2 claim.

### D. The current timeline cannot work for a constitutional claim.

This Court gave Plaintiffs the ability to specifically amend and to conduct additional discovery "pertaining to [] *Callais*." Doc. 87 at 1. Adding an entirely new claim will require significantly more time and effort, all unrelated to *Callais*. If this court permits Plaintiffs to start an entirely new case at this point, it will be prejudicial to Defendants without a significant extension of the discovery period. In short, additional discovery relating to the constitutional count could not be completed by the current September deadline and likely not by even the end of this calendar year.

If this Court grants Plaintiffs' motion, it should convene a status conference with all parties to discuss the future direction of this case. Before extensions, this Court previously authorized six months of discovery. Doc. 44 at 3. If this Court permits more discovery on intentional discrimination, it will need to authorize at least six more months of discovery, with a new expert-witness schedule and additional permitted topics. By way of example, Defendants did not present a historical expert because the historical questions were only one part of the Senate factors analysis under the Section 2 claim. But under the constitutional claim, Defendants will be required to make a defense involving at least four different historical areas. *See Greater Birmingham Ministries*, 992 F.3d at 1322.

This case has been pending for more than a year and a half. During that time, the parties completed discovery and Defendants moved for summary judgment. Plaintiffs sought an amendment of the prior schedule for purposes of a short period of additional discovery—which would be achievable if the additional discovery was limited to *Callais*. A short additional discovery period is not possible if this Court authorizes a new intentional-discrimination claim.

Houston County should not be punished with yet another claim that will drag on at a significant cost to taxpayers.

## CONCLUSION

This Court should deny the motion to amend to the extent it adds a constitutional claim that has not previously been part of this litigation. In the alternative, if this Court permits the addition of a previously unasserted Count II, which is unrelated to *Callais*, this Court should convene a status conference, with plans to order an additional six months of discovery, a new expert schedule, and a hearing as to the Motion for Summary Judgment (which would then be a Motion for Partial Summary Judgment) as to Count I.

Respectfully submitted this 27th day of July, 2026.

*/s/ Bryan P. Tyson*
Bryan P. Tyson
Georgia Bar No. 515411
btyson@tysonyounker.law
David J. Younker
Georgia Bar No. 940387
dyounker@tysonyounker.law
**Tyson Younker LLC**
1225 Johnson Ferry Road
Suite 600-A
Marietta, GA 30068
678.223.3160 (phone)

*Counsel for Defendants*